[No. 11873. In Bank. — May 12, 1890.]

MARY J. BRYAN, EXECUTRIX, RESPONDENT, v. PAT-
RICK TORMEY, APPELLANT.

PLEADING — FINDING — VARIANCE — APPEAL — SUPPORT OF JUDGMENT. —
A judgment cannot be sustained upon appeal, when the case proved
and found is not the case made by the complaint; though another good
cause of action may appear in favor of the plaintiff.

ID. — QUIETING TITLE — EQUITABLE TITLE — ENFORCEMENT OF TRUST. — A
judgment quieting title in favor of the owner of an equitable title, against
a defendant who appears, from the proofs and findings, to hold the legal
title in trust for the plaintiff, cannot be sustained upon a complaint to
quiet title, with the ordinary averments of ownership and possession by
plaintiff, and unfounded claim by defendant, though the facts proved
and found may clearly entitle the plaintiff, under proper pleadings, to a
decree compelling a conveyance of the title and a delivery of possession.

ID. — AMENDMENT OF PLEADINGS. — The complaint in such case might have
been amended at the trial so as to conform to the proofs and findings;
and the proofs showing a clear cause of action in favor of plaintiff for
the enforcement of a trust, leave to amend the pleadings and retry the
case accordingly will be granted upon reversal of the judgment.

VENDOR AND PURCHASER — EVIDENCE OF EQUITABLE TITLE AND TRUST —
ACTS AND DECLARATIONS OF VENDOR. — The acts and declarations of
the vendor of real estate are competent evidence to show that the vendee
took possession of the land sold under a parol agreement that it was to
be conveyed when paid for, and that the vendor had received the agreed
price, and thereafter held the naked legal title in trust for the vendee
and his grantees.

APPEAL from a judgment of the Superior Court of
Alameda County, and from an order denying a new
trial.

The facts are stated in the opinion of the court.

*Stanly, Stoney & Hayes*, for Appellant.

The case presented by the pleadings is not that made
by the findings, and the special findings, showing an
equitable title in the plaintiff and legal title in the
defendant, are inconsistent with the judgment. (*Von
Drachenfels* v. *Doolittle*, 77 Cal. 295; *Frost* v. *Spitley*, 121
U. S. 552.) Parol evidence was incompetent to prove
title in Peter Mathews. (Code Civ. Proc., sec. 1971;

Civ. Code, secs. 1091, 1624 (5); *Walker* v. *Dunpaugh,* 20
N. Y. 170; *Hayes* v. *Livingston,* 34 Mich. 296; 22 Am.
Rep. 533; *Mills* v. *Graves,* 38 Ill. 467; 87 Am. Dec. 314;
*Swick* v. *Sears,* 1 Hill, 17.)

*W. H. H. Hart,* and *Aylett R. Cotton,* for Respondent.

The court was authorized, from the evidence, to pre-
sume a lost deed in support of plaintiff's title, though
none was proved to exist. (*Fletcher* v. *Fuller,* 120 U. S.
534; *Lessee* v. *Inloes,* 1 Gill, 430; *Williams* v. *Donnell,* 2
Head, 655–697.) The declarations of John Mathews,
while holding the legal title, were competent evidence of
his agreement to convey. (Code Civ. Proc., sec. 1849;
*McFadden* v. *Wallace,* 38 Cal. 58.)

BEATTY, C. J.—The land in controversy in this action
is part of a Mexican grant patented to the Peraltas in
1877. In 1859, one Jurgo, being owner by conveyance
from the Peraltas of a part of the grant, sold and con-
veyed two adjoining parcels to the brothers John and
Peter Mathews respectively.

There was a map of the Peralta grant, known as Kel-
lersberger's map of the ranchos of Vicente and Domingo
Peralta, upon which the different subdivisions were desig-
nated by numbers, subdivision 56 being north of and
adjoining subdivision 53. The conveyance from Jurgo
to John Mathews included 53 and the south 27.41 acres
of 56. The part of 56 adjoining on the north was in-
cluded in the conveyance to Peter Mathews.

After the conveyances from Jurgo, the brothers Mathews
were in possession for a time of the parcels conveyed to
them respectively, and John Mathews paid the taxes on
the south 27.41 acres of 56.

In 1861 Harmon and Opdyke purchased 53 from John
Mathews, and at the same time offered to purchase the
south 27.41 acres of 56. But John Mathews refused to
sell them this part of 56, for the reason assigned by him,

that he had promised it to his brother, Peter, saying at the same time that he would not give him a deed till he paid for it, and that when he did pay for it he would give him a deed. These declarations were repeated to Harmon on more than one occasion in substantially the same terms. Subsequently, in conveying 53 to Harmon and Opdyke, John Mathews in his deed described the tract conveyed as being bounded on the north by land of Peter Mathews, thus distinctly declaring in writing that the southern part of 56 was his brother's land.

About the same time Peter Mathews took possession of said 27.41 acres of 56, inclosed it with other lands of his own, and afterward cultivated and used it as if it was his own. For two years prior to this date, this parcel had been assessed to John, and he had paid the taxes. Ever afterward it was assessed to and the taxes were paid by Peter and his grantees. From the time he so entered into the possession, Peter in every way acted as if he was the owner of this parcel, and in 1872 he sold and conveyed seventeen acres of it to the plaintiff's grantors. For three years he remained in possession of the part sold as tenant of his grantees, but in 1875 they leased their portion to another tenant, Garin, who occupied, used, cultivated, and resided upon it. It was not, however, separately inclosed, but remained as before, in a common inclosure with Peter's other land adjoining.

In 1879 Peter died, and his widow administered upon his estate as executrix. His brother, John, was one of the appraisers of his estate, and, as such, appraised as a portion of his estate the western ten acres of the south 27.41 acres of 56, — being the part thereof which he had not sold to plaintiff's grantors. This was John's second declaration or admission in writing that it was his brother's land. Previous to this, when third parties were endeavoring to get a road opened through this twenty-seven-acre tract, John had, at their request, endeavored to persuade Peter to consent to it, and had said,

in effect, that Peter ought to do so because he had got the land for a small price. And at various dates, and under a variety of circumstances, down to a time subsequent to Peter's death, John had made frequent and emphatic declarations to the effect that this land was Peter's.

But shortly after Peter's death, record-searchers made the discovery that the grantees of Peter had no record title to this particular tract of land. When John was informed of this, his first acts and declarations were entirely consistent with his previous acts and declarations as to his brother's ownership, but upon second thought he and the defendant Tormey, who is his son-in-law, seem to have concluded that the claims of Peter and his successors were not as meritorious as they were previously supposed to be. They caused a careful search of the records to be made, and after satisfying themselves that no evidence could be discovered of any conveyance from John to Peter, and after taking legal advice, concluded, or at least Tormey concluded, that it would be safe to take a conveyance from John Mathews and claim the land. He accordingly took such conveyance in 1880, paying nothing for it, and having full knowledge of the claims and possession of Peter and his grantees.

Shortly afterward he went with eight or ten men, and forcibly dispossessed Garin, the tenant of plaintiff, and inclosed in a separate inclosure the eastern seventeen acres of the parcel which had been sold by Peter to plaintiff's grantors, but leaving out the unsold ten acres on the west,—the same that John had previously appraised as part of Peter's estate. This ten acres he shortly afterward conveyed to Peter's widow, gratuitously and voluntarily, without any request from her.

An action of forcible entry was instituted by Garin against Tormey to recover possession of the land, but for some unexplained reason it failed, and thereafter, in 1883, this action was commenced.

The action, as above stated, is one to quiet title, and the complaint alleges, among other things, ownership and possession by plaintiff, and unfounded claim by defendant.

The proofs on the trial were substantially as above set forth, and the findings and judgment of the superior court were in favor of the plaintiff. Defendant appeals from the judgment, and from an order denying a new trial.

The judgment of the superior court cannot be sustained, because the case proved and found is not the case made by the complaint.

The facts proved show clearly enough that the plaintiff has a good cause of action, and is entitled to relief substantially as decreed, and if the complaint had been amended at the trial so as to conform to the proofs and to correspond with the findings, we should have found no difficulty in affirming the judgment. But this was not done, and the judgment must necessarily be reversed, and the cause remanded, in order that the complaint may be properly amended.

With a view to future proceedings in the cause, it is necessary that we should briefly indicate our views upon some of the points discussed in the briefs.

The acts and declarations of John Mathews, in reference to the ownership of Peter, are competent and amply sufficient to show that he sold the land to Peter, put him in possession of it, and received the agreed price prior to the year 1869; that Peter and his grantees were, from and after that date, the owners of the equitable title, and that John, if he did not execute a conveyance (which we think it highly probable he did), thereafter held the naked legal title in trust for Peter and his grantees.

The proof, to our minds, is absolutely overwhelming that Peter bought and entered into possession of the land under a parol agreement with John that it was to

be conveyed when paid for, and that it was paid for prior to 1869, and that at all times after 1861, until the forcible entry of defendant, Peter and his grantees were rightfully in possession and entitled to a conveyance, if in fact one had not been made.

The acts of John Mathews and his son-in-law Tormey, after Peter's death, bear every indication of having been prompted solely by the belief that all evidence of Peter's rights was lost, and that they could therefore despoil his grantees of their property.

In this we think they are mistaken, and that on the facts proved, under proper pleadings, a decree should be made compelling Tormey to convey the title and deliver possession of the seventeen acres to Peter's grantees, as he has already done with respect to the ten acres remaining in possession of the widow.

The judgment is reversed, and the cause remanded, with directions to the superior court to permit the parties to amend their pleadings, and thereupon to retry the case, in accordance with the views herein expressed.

Fox, J., McFarland, J., and Paterson, J., concurred.

Rehearing denied.