[S. F. No. 177.    Department Two.—July 22, 1896.]

JOHN CHETWOOD, JR., RESPONDENT, *v.* THE CALIFORNIA NATIONAL BANK ET AL., DEFENDANTS. R. P. THOMAS, APPELLANT.

CORPORATIONS—INSOLVENT NATIONAL BANK—ACTION BY STOCKHOLDER AGAINST DIRECTORS—NEGLIGENT MISCONDUCT—FRAUD—BILL IN EQUITY —ACTION EX DELICTO.—When an action is brought by a stockholder of an insolvent national bank, after demand made upon the comptroller of the currency, upon the receiver, upon the bank and its board of directors, to prosecute the action, and their refusal to institute it, to recover jointly from three directors, constituting an executive committee of the board, for the use and benefit of the corporation, a sum alleged to have been lost through their negligent misconduct and collusive fraud in the management of its affairs, such action, though entitled a bill in equity for an accounting and settlement of a trust, is, in its nature, a legal action *ex delicto* against the defendants, sued as joint tort feasors, and not *ex contractu*, and the averment that defendants promised faithfully to discharge their trust with care and attention is needless, and does not affect the nature of the action.

ID.—PLEADING—JOINT NEGLIGENCE OF COMMITTEE—VARIANCE—FINDINGS —NEGLIGENCE OF PRESIDENT.—When the charge in the complaint is of the joint negligence of the defendant as constituting an executive committee of the board of directors of the bank, findings which omit to pass upon the joint negligence and misconduct charged, and which pass upon the negligence of one of the defendants as president of the bank, are not responsive to the pleadings, and show a material variance from the cause of action pleaded, and require a reversal of the judgment, and the variance may be objected to upon appeal from the judgment alone, and the fact that it might have been cured by amendment does not make the variance less fatal to the validity of the judgment.

ID.—ACTION BY SHAREHOLDER—SUIT IN BEHALF OF CORPORATION.—An action by a shareholder to enforce corporate rights must be regarded as a suit brought on behalf of the corporation, and the shareholder can enforce only such claims as the corporation could enforce; and the essential character of the cause of action remains the same, whether the suit be brought by the corporation or by a shareholder.

ID.—SETTLEMENT WITH TORT FEASOR—RETRAXIT—RELEASE OF JOINT TORT FEASORS.—When several tort feasors have been sued jointly in a single action, a payment made by one of them, however large or small, in settlement and discharge of the claim against him, and a retraxit of the

cause of action as against him, operates to release all of the defendants sued as joint tort feasors.

ID.—DAMAGES—JUDGMENT IN JOINT ACTION—SATISFACTION AND RELEASE. In a joint action for damages against several defendants, where all are held liable, the judgment must be for joint damages; and a satisfaction and release of such judgment as to one of the defendants operate in law as a satisfaction and release of all of the defendants.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  D. J. MURPHY, Judge.

The facts are stated in the opinion of the court.

*J. A. Stephens,* for Appellant.

The judgment should be reversed, as the case found by the findings is not the case presented by the pleadings. (*Bryan* v. *Tormey,* 84 Cal. 126; *Curtiss* v. *Bachman,* 84 Cal. 216.)  This objection may be taken on an appeal from the judgment-roll alone.  (*Putnam* v. *Lamphier,* 36 Cal. 151.)  The action being against three tort feasors for damages for negligence, the release of two tort feasors for a valuable consideration released the appellant.  (*McCool* v. *Mahoney,* 54 Cal. 491; *Beal* v. *Finch,* 11 N. Y. 128; *Halsey* v. *Woodruff,* 9 Pick. 555; *Hillman* v. *Newington,* 57 Cal. 56; *Urton* v. *Price,* 57 Cal. 270; *Tompkins* v. *Clay Street R. R. Co.,* 66 Cal. 163; *Livingston* v. *Bishop,* 1 Johns. 290; 3 Am. Dec. 330.)

*A. W. Thompson, John Chetwood, Jr.,* and *Thompson & Thompson,* for Respondent.

There is no variance in the decision from the pleadings.  As plaintiff had the right of election as to who to make parties defendant, he had the resulting right to dismiss from the action one or more, and take action against the remaining obligors.  (*Heppe* v. *Johnson,* 73 Cal. 265; *People* v. *Evans,* 29 Cal. 429; *People* v. *Love,* 25 Cal. 526; Cook on Stocks and Stockholders, sec. 748.) This is not an action in tort, but is a bill in equity for accounting of a trust.  (*Trustees etc.* v. *Bosseiux,* 3 Fed. Rep. 833; *Brinckerhoff* v. *Bostwick,* 88 N. Y. 58, 59; *Hand*

v. *Atlantic Nat. Bank*, 55 How. Pr. 231; *Ackerman* v. *Halsey*, 37 N. J. Eq. 356; *United States* v. *Dewey*, 39 Fed. Rep. 251; *Stark* v. *Wellman*, 96 Cal. 400; *Asevado* v. *Orr*, 100 Cal. 300; *Thelin* v. *Stewart*, 100 Cal. 374; *Walsh* v. *Chicago etc. R. R.*, 42 Wis. 23, 26; 24 Am. Rep. 376; Rapalje and Lawrence's Law Dictionary, and Abbott's Law Dictionary, title "Tort"; Bigelow on Torts, 559–732; *Leed's Estate etc. Co.* v. *Shepherd*, L. R. 36 Ch. Div. 787, 807; *Concha* v. *Murrieta*, L. R. 40 Ch. Div. 553; *Stephens* v. *Overstolz*, 43 Fed. Rep. 465; 16 Am. & Eng. Ency. of Law, 388, note.)

Henshaw, J.—This is an appeal from the judgment alone.

Plaintiff, as a stockholder of the California National Bank, prosecuted this action against certain directors of the bank to recover from them, for the use and benefit of the corporation, the sum of four hundred thousand dollars, alleged to have been lost to the corporation by their negligent misconduct in the management of its affairs.

The bank had become insolvent before the commencement of the action, and a receiver was in charge of its affairs. Plaintiff made demand upon the comptroller of the currency, upon the receiver, upon the corporation, and upon its board of directors to prosecute the action, and upon their refusal it was instituted in his name as plaintiff.

The complaint, while it is entitled a bill in equity for an accounting and settlement of a trust, contains, as will hereafter be made manifest, nothing more than a charge *ex delicto* against certain directors for a breach and nonperformance of their duties. The three directors whose conduct is attacked, and who are the defendants against whom a judgment is sought, are Richard P. Thomas, president of the corporation, Robert R. Thompson, vice-president, and Robert A. Wilson, a director; the three constituting the executive committee

which is created, and whose powers are defined, by the by-laws.

The president and vice-president were under the by-laws *ex officio* members of this executive committee. The third member, Wilson, was selected by the board.

The complaint sets forth the section of the by-laws defining the powers of the president, and also that section specifying the duties and powers of the vice-president. It contains likewise a by-law defining the duties and powers of the executive committee, which is as follows:

" Sec. 7. There shall be appointed by the board of directors a committee known as the executive committee, consisting of the president, vice-president, and one or more directors, to continue to act until succeeded, who shall have and exercise immediate supervision of all the officers and business of this bank; who shall audit all bills for current and other expenses, who shall have power to discount and purchase bills, notes, and other evidences of debt, and to buy and sell bills of exchange, coin, and bullion, and loan money on personal security, and who shall at each regular meeting of the board of directors make a report of all bills, notes, and other evidences of debt discounted or purchased by them for the bank, and of concurrent and other expenses audited since their last previous report."

The complaint then avers that the three defendants named " were duly elected, and by said board appointed, the executive committee of said corporation and board of directors; . . . . and the said three persons have constituted and been the said executive committee under said by-laws; and thereupon each of said defendants, Thomas, Thompson, and Wilson, duly accepted said office, to which they had as last herein aforesaid been elected and appointed; . . . . and that upon their said election and appointment as such officers, the said three defendants severally, and as such president, vice-president, and executive committee, duly accepted the positions of the respective officers, and, as provided in

the above-mentioned code of by-laws and the above-quoted sections thereof, and duly accepted the trusts and obligations to perform each and all of the duties therein prescribed, with due skill, care, attention, prudence, diligence, and fidelity. . . . . That, as such executive committee, said three persons, Thomas, Thompson, and Wilson, as such committee, assumed the discharge of the duties thereof, and in due performance of their duties had, from said date of their first appointment continuously until the failure of said corporation, the immediate supervision of all the officers and business of said corporation. . . . . On the said three said persons, the above-named defendants, Thomas, Thompson, and Wilson, as such executive committee, devolved, and continuously remained throughout all of said time, the duty to exercise immediate supervision of all officers and business of said bank for said corporation. . . . . That it was the duty of each of said members of the executive committee to exercise, concurrently with his associates on said committee, diligence and fidelity in performing the duties of said committee, as above detailed; that, well knowing each and all of said facts above recited, said three persons above named, defendants Thomas, Thompson, and Wilson, severally being fully aware of the nature and extent of said trust, and the duties thereof, accepted and retained said trust, and unto the said corporation promised faithfully to discharge the same, and each and all of the said duties thereof, in a proper, careful, and judicious manner. . . . . That the business of said banking corporation was commenced shortly after October, 1886, but afterward, and for a long space of time, the defendants above mentioned, Thomas, Thompson and Wilson, not regarding their aforesaid duties, nor their respective and concurrent promises in that behalf, but wholly disregarding the same, and *contriving together to injure and deceive the said corporation, neglected and omitted,* without any reasonable excuse, to exercise their own skill, care, judgment and discretion in the making of loans and discounts out

of the moneys in the possession of said bank, and other-wise directing the business of said bank, but they negli-gently permitted the cashier of said bank to control and manage the whole business of the said bank as he saw fit, and without consulting or in anywise inform-ing said defendants, or any or either of them, to lend the moneys of the said bank according to his own pleasure by bills of exchange, without any consultation with said defendants, or any or either of them, in such manner as he, the said cashier, elected, to dispose of all the moneys of said bank. . . . . That by such negli-gence, worthless loans, and the various transactions above mentioned, the moneys of the corporation were wasted, misused and lost."

Then follow averments of specific instances of loss occasioned by improvident loans and purchases made by the cashier without the knowledge of these defend-ants; averments of demand upon the corporation, the receiver, and the comptroller to commence suit. It is then averred " that the defendants, Thomas, Thompson, and Wilson, are financially responsible and able to make good the losses which have resulted to said cor-poration by reason of their said negligence"; and, in conclusion, a prayer " for a decree that the said trustees, the above-named defendants, Thomas, Thompson, and Wilson, be held to an accounting of their said trust; that they restore unto said corporation the sum of four hundred thousand dollars, with legal interest; that a joint and several money judgment against them, the said Thomas, Thompson, and Wilson, for the sum of four hundred thousand dollars, with legal interest thereon from the time of such loss, and costs herein, be rendered and entered by this court in this case in favor of said corporation, the California National Bank of San Francisco."

For reasons which will hereafter appear, we do not consider it necessary to meet and dispose of many of the objections raised by appellant to this complaint. Therefore, it will be assumed, without deciding, that

the complaint is sufficient to state a cause of action in its averments of misconduct, and that its averments of a demand and refusal to prosecute upon the comptroller, the receiver, and the corporation itself are sufficient. And so as to other points of objection raised by appellant, the silence of this opinion is not to be construed as a determination of them.

There is no room for argument upon the question as to whether this complaint is upon a cause of action *ex contractu*, or upon one sounding in tort. It demands a joint and several money judgment against three men constituting an executive committee, and charged with the performance of certain duties, for "contriving together to injure and deceive the corporation," and for injuring and deceiving it, by neglecting their duties, in the sum of four hundred thousand dollars. These defendants are charged throughout as joint tort feasors. If they were not, they could not be made defendants in one action. Their contrivance to injure was their joint contrivance. Their neglect is pleaded as their joint neglect to perform, not duties individually imposed upon them, but collectively undertaken as members of the executive committee. It is as members of the executive committee that they are alleged to have done the wrongs and permitted the losses. It is true that the complaint sets forth the by-laws relative to the duties of the president and of the vice-president, but no charge of loss incurred by negligence is made against the president as president. If there were, then, as the other two defendants would not be chargeable with the president for his individual misconduct as president, it would be the subject matter of a separate action, and have no place in this complaint. The prayer of the complaint, which may be looked to for aid in determining the nature of the proceeding, asks for a joint and several money judgment in the sum of four hundred thousand dollars, with legal interest, against the three defendants. No claim is anywhere made that there is a several and separate liability upon any one of the

three, and not upon the others, for any of the acts charged against. To the contrary, from the beginning of the complaint to its prayer for a judgment, it is averred that the loss sustained was suffered through the common and collusive negligence of the three. It is alleged that the three defendants are "financially responsible and able to make good the losses which have resulted by reason of *their said negligence.*" If the negligence did not arise in their failure to perform a common duty, they could not, and would not, have been made joint defendants. The trial court, moreover, found them to be jointly liable, and ordered a judgment against the three in a single amount.

The gravamen of the charge is the injury to the property of the bank by reason of the wrongful acts of the defendants. For these wrongful acts defendants are liable in tort, and the fact that there might be another cause of action *ex contractu* is a matter entirely apart. It frequently happens that the negligence complained of is the breach of a duty originating in contract, and in such cases the cause of action for tort may coexist with a liability upon the contract. The negligence of a common carrier gives rise to an action *ex contractu,* or to one of trespass on the case. Historically, the action for tort is the older. "If a smith prick my horse with a nail, I shall have my action upon the case against him, without any warranty by the smith to do it well. . . . . For it is the duty of any artificer to exercise his art rightly and truly as he might." (Fitzherbert's Natura Brevium, 94 D.) Even an intention to violate another's rights of property is not necessary to give one his action for trespass regarding his lands or goods. With or without contract the duty is imposed upon all not to injure the property of another. And for a failure to observe that duty the right of action in trespass for the tort exists.

Such is the cause of action here set up. The averments that defendants "promised faithfully to discharge their trust with due care and attention," etc., are un

necessary, and do not affect the cause of action. The law imposed upon them the duty of using due care when they agreed to discharge their duties as members of the committee. Their failure to use due care was a wrong, for which plaintiff is seeking redress. This wrong is charged, not to have been committed inadvertently or carelessly, which would amount to negligence pure and simple, but to have been wrought against the corporation through contrivance and collusion, with a design to injure it—a charge which establishes that the pleader must have considered that he was dealing with a case of willful tort, partaking of the nature of a fraud.

It is claimed by appellant that the findings are not responsive to the issues joined by the pleadings, and to the understanding of this contention some explanation becomes necessary.

The three defendants answered this complaint, making denial of the charges against them, and trial was had. The court, upon April 27, 1894, made and filed what is entitled an "Order of Judgment," as follows:

"This cause having been heretofore submitted to the court for consideration and decision, and taken under advisement, and the court having fully considered the same, and being fully informed, it is ordered by the court that judgment be, and the same is hereby, entered in favor of the plaintiff and against the defendants, Richard P. Thomas, Robert R. Thompson, and Robert A. Wilson, and in favor of the other defendants herein; and, inasmuch as the testimony is unsatisfactory, the court being unable therefrom to determine the amount for which judgment should be entered, it is ordered by the court that a referee be appointed to take proof on that subject," etc.

The referee was appointed, and directed to ascertain and report to the court the amount of the indebtedness due to the bank by certain named debtors thereof, for whose debts the defendants were to be held responsible. Upon August 17, 1894, the referee made his report, and found that there was owing to the bank from these

debtors a sum of money in excess of one hundred and ninety thousand dollars. After this report had been filed, plaintiff accepted from two of the defendants, to wit, from Thompson and Wilson, the sum of twenty-seven thousand five hundred dollars, and for and in consideration of said sum renounced and withdrew his cause of action against these defendants, and dismissed the same, causing a formal judgment of dismissal to be entered therein. The judgment of dismissal follows the language of the stipulation which the parties entered into, and which declared that the plaintiff "hereby renounces and withdraws his cause of action herein as against the said defendants, and that he will not further prosecute the same; . . . . that, pursuant to the foregoing renunciation and withdrawal by the plaintiff of his said cause of action, this action be, and is hereby, dismissed against the said defendants." The order for a dismissal was filed September 24, 1894, and the judgment was formally entered upon the same date. The stipulation for dismissal was, however, entered into upon September 13, 1894.

Upon the twentieth day of November, 1894, the court made and filed its findings of fact and conclusions of law. Throughout these findings no mention is made of any dereliction of duty upon the part of Thompson and Wilson. It is not found that the executive committee, or that any member of the executive committee, or that Thompson, or that Wilson, was or was not negligent, did or did not contrive together, or with Thomas, to injure and deceive the corporation. The findings are absolutely silent upon all of these material averments. In them, however, is set forth the by-law defining the duties of the president, and the findings proceed to charge the appellant herein, *as president*, with having himself individually committed acts of negligence by allowing the cashier to make loans which resulted in a loss to the corporation of the sum of one hundred and sixty-six thousand nine hundred and nineteen dollars. It is then found that, "from the de-

fendants, Robert R. Thompson and Robert A. Wilson—of, for, and on account of said loss—there has in this action been collected the sum of twenty-seven thousand five hundred ($27,500) dollars, leaving a net loss to the bank of the sum of one hundred and thirty-nine thousand four hundred and nineteen ($139,419) dollars." And·under these findings a judgment is entered that the California National Bank of San Francisco have and recover from the defendant, Richard P. Thomas, the sum of one hundred and thirty-nine thousand four hundred and nineteen dollars, with interest.

There is here an absolute failure by the court to find upon the most material issues of the case, the joint negligence of the three defendants, which alone, it is alleged, has occasioned loss to the bank. Such is the cause of action pleaded in the complaint. The findings, if it. be conceded that they give evidence of a meritorious cause of action against defendant Thomas, do so because of a showing that he was negligent, not with the other defendants and as a member of the executive committee, but that he was individually and separately negligent in the performance of his duties as president. But this is not the cause of action pleaded against him, and it is well settled that, where the case made out by the findings is a different case from that presented by the pleadings, the judgment will be reversed; for the relief decreed must be the relief sought, and the variance, even if it be such as could have been cured by amendment, is fatal to the validity of the judgment (*Bryan* v. *Tormey*, 84 Cal. 126), and the point may be raised upon appeal from the judgment alone. (*Putnam* v. *Lamphier*, 36 Cal. 151.)

But while this error would necessitate a reversal, there is yet a more serious objection to be considered. This action, while in form pertaining to equity, is in its cause and substance a legal action to recover damages for tort against the three defendants pleaded as joint tort feasors. "A suit of this character," says Morawetz on Corporations, section 271, " is brought to enforce the corporate

or collective rights, and not the individual rights, of the shareholders. It may, therefore, properly be regarded as a suit brought on behalf of the corporation, and the shareholder can enforce only such claims as the corporation itself could enforce. Moreover, the essential character of a cause of action belonging to a corporation remains the same, whether the suit to enforce it be brought by the corporation or by a shareholder. Thus, a legal right of action would not be treated as an equitable one, or become governed by the rules applicable to equitable causes of action as to limitations, etc., because a shareholder has brought suit in equity to enforce it on behalf of the company."

In *Hun* v. *Cary*, 82 N. Y. 70, 37 Am. Rep. 546, such an action as the one at bar was brought by the receiver of the Central Savings Bank of the city of New York against defendants, who were trustees of the bank, to recover damages which it is alleged they caused the bank by their misconduct as trustees. Objection was made in the appellate court that the cause pertained to equity, and should have been tried before the equity branch of the court, instead of before a jury. The court of appeals used this pertinent language in disposing of the contention: " The receiver in this case represents the bank, and may maintain any action the bank could have maintained. The trustees may be treated as agents of the bank, and for any misfeasance or nonfeasance causing damage to the bank they were responsible to it upon the same principle that any agent is for like cause responsible to his principal. It has has never been doubted that a principal may sue his agent in an action at law for any damages caused by culpable misfeasance or nonfeasance in the business of the agency. The only relief claimed in this complaint was a money judgment, and, we think, was properly tried as an action at law. No equitable rights were to be adjusted, and there was no occasion to appeal to an equitable forum. . . . . In actions *ex delicto* the plaintiff may sue one, some, or all of the wrongdoers. . . . .

This claim was purely for unliquidated damages occasioned by a tort."

While plaintiff may sue one or all of joint tort feasors, and while he may maintain separate actions against them, and cause separate judgments to be entered in such actions, he can have but one satisfaction. Once paid for the injury he has suffered, by any one of the joint tort feasors, his right to proceed further against the others is at an end. Where several joint tort feasors have been sued in a single action, a retraxit of the cause of action in favor of one of them operates to release them all. The reason is quite obvious. By his withdrawal, plaintiff announces that he has received satisfaction for the injury complained of, and it would be unjust that he should be allowed double payment for the single wrong. It matters not, either, whether the payment made was in a large or in a small amount. If it be accepted in satisfaction of the cause of action against the one, it is in law a satisfaction of the claim against them all.

In the case at bar it is disclosed that, after the court had awarded a single judgment, not in separate amounts, but in a lump sum, against the three defendants jointly charged, who were thus found to be jointly liable, the plaintiff accepted from two of them the sum of twenty-seven thousand five hundred dollars for and on account of the injury and loss which the corporation had sustained, and a judgment of dismissal in their favor was accordingly entered. That this judgment, entered under the stipulation of the parties, was equivalent to a retraxit there can be no doubt under the case of *Merritt* v. *Campbell,* 47 Cal. 542. The findings disclose that payment was made by the two defendants upon account of the judgment ordered against the three jointly, and the release was doubtless in consideration of that payment. Where a joint action is brought against two or more for trespass done, and all are held liable, the judgment must be for joint damages. All legal consequences of a joint judgment

must follow. Each is liable for all the damage which the plaintiff has sustained, without regard to their different degrees of culpability, and a release to one discharges all.

The plaintiff in this case, by accepting twenty-seven thousand five hundred dollars from the two defendants for and on account of the joint trespass of the three, and by releasing them, has released his claim against the third. In *Urton* v. *Price*, 57 Cal. 270, an action for personal injuries occasioned by the explosion of chemicals was brought against Price, the demonstrator at a lecture. The charge was negligence. Thereafter plaintiff added the Mechanics' Institute, under whose direction the lecture was given, as a defendant. Subsequently plaintiff filed a stipulation discontinuing and dismissing the action as to the defendant, the Mechanics' Institute. Thereupon the defendant Price filed an amended answer, setting forth that, after the commencement of the action, plaintiff had accepted five hundred dollars from the Mechanics' Institute for the injury he had received, and had dismissed the suit as to the Institute. Judgment was entered in the trial court that plaintiff had received satisfaction for his injuries, and, upon appeal to this court, it was held that this constituted a release of plaintiff's claim against Price.

In *Tompkins* v. *Clay Street R. R. Co.*, 66 Cal. 163, plaintiff sued the Sutter Street Railroad Company and the Clay Street Railroad Company for damages for personal injury, alleging that it was occasioned by their joint negligence. The court refused to instruct the jury as follows:

" The defendant Clay Street Hill Railroad Company, by its supplemental answer, avers that plaintiff has released and discharged the Sutter Street Railroad Company. If you find from the evidence that the plaintiff has received any sum of money whatever from the defendant Sutter Street Railroad Company, as compensation for the injuries received by her, and has released and discharged the defendant the Sutter Street Railroad

Company from all claim for damages arising out of this action, then you are instructed to bring in your verdict for the defendant the Clay Street Hill Railroad Company."

This court reversed the case for the refusal to give this instruction, holding it to be proper, and laying down the rule as here set forth, and as universally accepted, that the release and discharge of one alleged tort feasor is a bar to further proceedings against the others.

In this case, it is true that the release is not pleaded by defendant Thomas in any supplemental answer, but the release itself was given after the court, by its order for judgment, had fixed the responsibility and the liability of the three defendants, and the record in this case and the declaration of the findings show that the money was paid for and on account of the loss which the court determined had been sustained by reason of the acts of the defendants. It clearly establishes the release, and the reason for it.

The judgment is reversed and the cause remanded, with directions to the trial court to enter a judgment in favor of the defendant Thomas.

McFARLAND, J., and TEMPLE, J., concurred.

Hearing in Bank denied.

BEATTY, C. J., dissented from the order denying a hearing in Bank.