[Civ. No. 3726. Third Appellate District.—April 2, 1929.]

W. MORTON, Respondent, v. ALBERS BROS. MILLING
CO. (a Corporation), Appellant.

Hickcox & Trude for Appellant.

C. L. Brown for Respondent.

McDANIEL, J., *pro tem.*—This appeal is from a judgment by the court sitting without a jury in favor of plaintiff and against defendant for the sum of $2,898. The complaint alleges that on September 16, 1920, at Brawley, California, the defendant corporation purchased from plaintiff 250 tons of milo maize at an agreed price of $50 per ton; that plaintiff delivered all of said maize in accordance with the contract and that defendant received and paid for 112 tons thereof, but after receiving the same refused to pay for and turned back to the plaintiff against his will and con-

sent 138 tons thereof and that defendant has not paid for the said 138 tons; that at the time of delivery when defendant refused to pay for the maize rejected the current market price thereof at Brawley was $29 per ton; that by reason of defendant's failure to take and pay for said milo maize the plaintiff was damaged in the sum of $2,898, no part of which has been paid.

The answer admits the purchase as stated in the complaint and sets out a true copy of the written contract, due execution of which is admitted. A portion only of said contract need be herein set out, as follows, to wit:

"W. Morton has this day sold, and the Albers Bros. Milling Co., a corporation, of El Centro, California, has this day bought 250 tons of good No. 1 marketable Milo now being grown or located Mead and Arnold Ranches to be sacked in Standard, new jute bags at the purchase price of $50.00 per ton, said Milo to be delivered F.O.B. cars Main line points by Dec. 1st, and seller further agrees to keep said Milo insured to the time of its delivery, in said Albers Bros. Milling Co.'s favor to an amount equal to that paid on same by said Albers Bros. Milling Co."

This contract was signed Albers Bros. Milling Co. by B. F. McCormick. After the evidence was taken and the cause submitted the court made its findings of fact, some of which substantially are as follows: That defendant is a corporation duly organized under the laws of this state; that on September 16, 1920, at Brawley, California, the defendant purchased from plaintiff the maize above mentioned at the stated price of $50 per ton as shown by the contract set out in the answer. Findings III and IV are as follows:

"That plaintiff had ready for delivery to defendant all of said 250 tons of milo maize at the place and in the condition and of the grade required by said contract, and within the time therein mentioned, and all in accordance with said contract, and offered to deliver all of said milo maize to the said defendant at the price and in the condition and of the grade required by said contract and within the time therein mentioned, and all in accordance with said contract, but that said defendant refused to accept any of the said milo maize, or to pay for any thereof, except 112 tons thereof, which 112 tons defendant accepted and paid for according to said contract. That upon defendant refusing to accept or pay for

the remainder of said milo maize, to-wit, 138 tons, the plaintiff sold the same, to-wit, 138 tons of said milo maize, at Brawley, California, for the sum of $29.00 per ton, and which said sum per ton was the current market price and value thereof.

"That by reason of the failure and refusal of the defendant to take and pay for the said milo maize in accordance with said contract, the plaintiff has been damaged in the sum of $2,898.00, no part of which has been paid."

As a conclusion of law the court finds plaintiff entitled to receive from defendant the said sum of $2,898, for which sum it duly made and entered its judgment.

On January 3, 1927, a motion for a new trial was made on the following grounds: 1. Insufficiency of the evidence to justify the judgment; 2. That the judgment is against law; 3. Error in law occurring at the trial and excepted to by defendants; and on the minutes of the court.

After argument this motion was denied on January 7, 1927. Appellant makes the following specifications of error:

"1. There is a material prejudicial variance between the allegations of the Complaint, the Findings of Fact and the Evidence.

"2. The Court erred in allowing certain evidence to be introduced over the objection of the defendant.

"3. The Findings of Fact are not supported by the evidence.

"4. The amount of damages fixed by the Court (conceding for the sake of argument that plaintiff was damaged) was wrong."

In support of his specification 1 as to prejudicial variance appellant cites *Bryan* v. *Tormey,* 84 Cal. 126, 130 [24 Pac. 319] ; *Chetwood* v. *California National Bank,* 113 Cal. 424 [45 Pac. 704]. We concede the soundness of the legal propositions in those cases, but see no similarity or parallel in the facts therein with the facts found in the case here. The complaint herein alleges delivery of all milo maize to defendant, the acceptance and payment for 112 tons thereof, the return of 138 tons and the refusal to pay for said 138 tons. Appellant argues there is no evidence it ever received any more than it paid for; and no evidence all the milo maize purchased was ever tendered. We believe appellant to be wrong in the latter statement. The testi-

mony of witness McCormick, the purchasing and contracting agent for defendant, and of Morton, the plaintiff, demonstrates that all the maize was at the proper places for delivery in November, several days prior to December 1, 1920. McCormick was the authorized buying agent for defendant. This is shown by the contract itself, which contract unquestionably was accepted and acted upon by defendant. ■ An agent authorized by a corporation to execute a contract of purchase of personal property and when necessary actually to buy cannot well deny that it would be bound by due notice to such buying agent that the commodity was ready for actual delivery nor to deny a tender of delivery of such personal property at the places indicated in the contract executed for it by its agent. Morton's testimony shows he in fact had the maize ready for delivery and not only told McCormick, but also informed Mr. Prenot, assistant manager of the Los Angeles branch of defendant corporation, and Mr. Cuthbertson, the Imperial Valley manager for defendant during the year 1920, that the maize was ready to deliver in November, 1920. Morton stated:

"A. (In reply to question of his attorney.) I told Mr. Prenot and Mr. Cuthbertson both that I had this 250 tons of corn. I had even more corn than that. I told them I had that corn ready to deliver to them.

"Q. When they were there testing it in the latter part of November, did any of them ask you then if you had the corn ready to deliver?

"Mr. Hickcox: Same objection.

"The Court: Overruled.

"A. Yes sir. I don't know whether they asked me or not, more than it was discussed that I had the corn. I don't know whether they asked me or whether I told them, but they knew I had the corn. There is no argument about that.

"Q. Was this corn in the Calipatria warehouse, I will ask you whether that was good, number 1, marketable milo on December 1st?

"Mr. Hickcox: Objected to as no sufficient foundation is laid for this witness to testify as to the quality of the corn, or grade of it.

"The Court: Overruled.

"A. It was."

Notwithstanding denials in the answer to the averments in the complaint as to actual delivery paragraph VII of the answer avers an affirmative defense:

"That thereafter the said plaintiff delivered to defendant 112 tons under the terms of said contract, which said defendant accepted as No. 1 milo maize and paid the contract price therefor; that the remainder of the said milo maize tendered to defendant for delivery did not grade, and was not good No. 1 marketable milo maize, and therefore the same was not accepted by defendant, but was rejected."

The foregoing excerpt from the answer clearly indicates it to be an admitted fact that plaintiff tendered all the maize purchased by defendant, namely 250 tons, and that tender was rejected as to 138 tons solely because defendant then and there claimed that the maize "was not good No. 1 marketable maize." It seems reasonable also to hold that when, as shown by the evidence, plaintiff was ready, able and willing to deliver the maize as required by the contract, actually tendered and offered delivery thereof, that acceptance of the offer was refused and the maize rejected, such offer should be deemed equivalent to actual delivery. The finding criticised, therefore, was supported by the evidence, was sufficient in material respects and the variance, if any, from the allegations of the complaint as to actual delivery was nonprejudicial. Defendant was not misled nor prejudiced in any manner nor in any degree. Respondent in this connection cites *Cousin* v. *Mason,* 78 Cal. App. 111 [248 Pac. 299], and cases therein collated on the point that as no objection at the time of the trial was interposed on the ground of variance nor motion made for nonsuit on that ground the objection of variance is deemed waived and cannot be raised for the first time on appeal. See, also, *Antonelli* v. *Kennedy etc. Lumber Co.,* 140 Cal. 309, wherein at page 320 [73 Pac. 966, 970], the court says: "Under the code no variance is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits," citing Code of Civil Procedure, section 469. We find no merit in the claim of variance. The findings squarely follow the evidence and answer on the matter of offer of delivery, rejection and refusal of payment.

 In the second specification appellant complains of the overruling of his objection on the question propounded to Morton as follows:

"Q. As to this corn under this contract which you had on hand on December 1, 1920, for the defendant, from your experience in raising and handling and selling corn, as you have detailed, what would you say as to whether this corn was at that time, to-wit, December 1, 1920, good, number one marketable milo? A. It was good, marketable, number one marketable milo maize."

This witness, as shown by his previous examination on the stand, was fully qualified as one experienced in growing and marketing this commodity for a number of years and his knowledge of the grain to testify as to the quality. Inspection of the contract shows it was made in Imperial County, delivery was to be made there and in all ways the contract was to be performed there. The expression in the contract "good number one marketable Milo maize" is not defined in the contract, and under section 1646 of the Civil Code "a contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Whether the rejected maize was good number one maize or not presented a simple question of fact. The testimony adduced on the part of plaintiff by several witnesses shows that when examined and measured by the customary methods practiced by buyers and sellers who dealt in such commodity in Imperial Valley the quality was that constituting good number one marketable milo maize. The testimony adduced on the same subject by the defendant tended to establish that when subjected to a certain moisture test the product was not equal to the standard of number one maize according to that established as a government standard, which is also that of the Los Angeles Grain Exchange. Secondary evidence as to this last-mentioned standard was admitted on the part of the defendant at the trial. By the method of interpretation supplied and directed in the Civil Code and followed in *Brett* v. *Vanomar Producers*, 45 Cal. App. 286 [187 Pac. 758], which we believe to be decisive of the question under consideration, we find no error in the learned trial court's ruling admitting testimony as to the customary methods of

determining the quality of milo maize. The contract itself is not so plain and unambiguous as to speak for itself unaided by extrinsic evidence. It, therefore, was permissible in this action to permit testimony as to the nature and details of ascertaining the quality by proof of the customs prevailing in the community to enable the court to interpret the contract in the sense in which the parties themselves understood it at the time of its execution. ■ The evidence upon the simple issue as to whether or not the maize offered by plaintiff was up to the standard required was determined by the trial court upon conflicting evidence. That finding under elementary and well-established rules cannot be disturbed on appeal. ■ Complaint is also made of the court's ruling in permitting McCormick, described as a discharged employee of the defendant, to answer certain questions asked by respondent as to the grade of the Calipatria and Rockwood corn, designating milo maize as corn. At first glance it appears as if the witness had been permitted to say the Calipatria corn was number one over objection when it is shown by the witness' testimony he had never examined the Calipatria lot of maize. There is no merit in this objection, although technically correct, because it appears fully from the context and the witness' frequent explanation that he had never examined the Calipatria corn and meant to testify only as to the Rockwood corn and the court could not have misunderstood the witness in this respect or been misled by his testimony. ■ Appellant also claims error when the court sustained the objection asked of the witness Prenot as follows:

"By Mr. Hickcox: Q. Did Mr. McCormick have any other or further authority than to buy grain for the Albers Bros. Milling Co.? Mr. Brown: Objected to as incompetent, irrelevant and immaterial and no proper foundation has been laid. It is calling for the conclusion of the witness, and there is no issue raised on that point. The Court: Objection sustained to the question asked."

The ruling was obviously correct. Other rulings objected to have been sufficiently covered and need not be further noticed.

■ The third specification of error that the findings of fact are not supported by the evidence cannot be sustained. Under the complaint and answer there was in reality but

one essential issue, namely, whether the corn delivered at the required places in Imperial Valley offered to defendant and rejected by it was or was not number one marketable maize. As heretofore indicated, that question was determined by the trial court on conflicting testimony against the contention of the appellant.

As to the fourth specification of error relating to the measure of damages it will be sufficient to state we think the evidence clearly establishes that Morton upon the rejection of the maize and the refusal to pay therefor within a reasonable time resold the property and obtained the best market value established in Imperial County on December 1, 1920, and at all times thereafter up to and including the date of resale, namely $29 a ton. There is some conflicting evidence on this point, but the court's finding of fact cannot be disturbed. We believe the proper measure of damages was applied. (Sec. 3311, subd. 1, Civ. Code.)

On the former trial of this case a verdict was brought in for the plaintiff for the amount prayed for in the complaint and the judgment on the verdict by the trial court was reversed and the case was sent back to the superior court for a new trial. (See *Morton* v. *Albers Bros. Milling Co.*, 66 Cal. App. 391 [226 Pac. 809].) The theory upon which the case was formerly tried was different from that established in the trial from which this appeal was taken. The judgment in each case, one following the verdict of the jury and the other following trial by the court without a jury, was the same and we are satisfied, both under the law and the evidence, the plaintiff established a meritorious cause of action.

The judgment is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.