[Civ. No. 8024. Second Appellate District, Division One.—October 30, 1934.]

HARRIET R. BLACKBURN, Appellant and Respondent, v. FRANK McCOY et al., Respondents; EDWARD A. HENDERSON et al., Appellants.

Halverson & Halverson for Appellants.

Newby & Newby, Dee Holder and Charles R. Newby for Appellant and Respondent.

Warren L. Williams, Seymour S. Silverton and Hyams & Himrod for Respondents.

HAHN, J., *pro tem.*—The action, which gives rise to the appeals which are before us, is one wherein the plaintiff brought suit to recover damages for the sum of $36,251.37, alleged to have been suffered by her by reason of losses sustained in a real estate transaction, in which she alleges she was induced to invest her money through fraudulent representations made to her by the defendants.

Plaintiff had judgment against the defendants Edward A. Henderson, Lawrence C. Gilgen, Edward Arends and Walter Marte for the sum of $36,251.37, while judgment went for the defendants Frank McCoy, Florence McCoy and the Title Guarantee and Trust Company.

Plaintiff appeals from that part of the judgment which is in favor of Frank McCoy, Florence McCoy and the Title Guarantee and Trust Company, while defendants Edward A. Henderson, Lawrence C. Gilgen, Edward Arends and Walter Marte appeal from the judgment rendered against them.

From the evidence it appears that on August 25, 1926, defendants Frank McCoy and Florence McCoy, his wife (who will hereafter be referred to as the McCoys), being the owners of a tract of land of about fifteen acres, gave to defendant Henderson a written option for. the purchase of the land for the sum of $146,250. Shortly thereafter Henderson informed Marte that he had this option and that the property could be bought for $174,000 with a cash payment of $52,500. Marte advised Gilgen and Arends, who were associated with him as salesmen for a large real estate brokerage concern, that the property could be bought, and expressed to them his opinion that it was a chance to make some money. Without Marte's knowledge, Gilgen and Arends contacted Mrs. Blackburn, who, after a number of interviews with them, agreed to purchase a one-half interest in the property on the basis of the price of $174,000, if they would secure purchasers for the other half. When Marte was advised by Gilgen that he had this proposal from Mrs. Blackburn, he agreed with Arends and Gilgen that they propose to Henderson a purchase by their group, including Mrs. Blackburn, of seven-eighths interest in the land with a cash payment of $25,000. This proposal contemplated that Marte, Gilgen and Arends would each take a one-eighth interest, without making any cash payment therefor. Henderson, before agreeing to accept this proposal, secured from the McCoys an agreement to accept $25,000 as a cash payment instead of $52,250 as provided in his option, and his note for $121,250 for the balance of the purchase price. Thereupon Henderson entered into an agreement to sell to Marte, Gilgen and Arends, and their associate whose name was not given to Henderson, a seven-eighths interest in the land for $152,250 with a cash payment of $25,000 and the notes of the buyers for the balance of the purchase price.

On October 20, 1926, Henderson and the McCoys executed an escrow agreement with defendant Title Guarantee and Trust Company, providing for the purchase by Hender-

son of the property for $146,250, which purchase price he agreed to pay $25,000 cash and the balance by his promissory note for $121,250 to be secured by a trust deed on the property. Neither the McCoys nor the escrow agent were informed at that time that any other person was or would be interested in the transaction. Some time prior to January 5, 1927, the trust company was informed by Henderson that there would be others interested in the property and that the form of the transaction would be changed so that title to the property would vest in the trust company and a declaration of trust created, in which the several parties interested in the property would have their shares represented by certificates of beneficial interest.

On January 5, 1927, Mrs. Blackburn, accompanied by Gilgen, went to the office of the trust company and there executed her escrow instructions providing for the purchase by her of a one-half interest in the declaration of trust for $87,000 to be paid $26,250 in cash and $60,750 by her promissory note made payable to Henderson. On the same day Gilgen, Arends and Marte gave their instructions and executed and delivered into escrow their respective notes made payable to Henderson for their shares. On January 25, 1927, the transaction was closed. The McCoys received $25,000 in cash, less some charges, which was the cash payment Henderson agreed to pay under his escrow agreement with them, and Henderson's note for $121,250. Henderson in turn received the notes of Blackburn, Gilgen, Arends and Marte, together with their certificates of beneficial interest in the trust as security for the payment of their respective notes. Prior to January 25, 1927, Henderson had never met Mrs. Blackburn.

After some six months of fruitless effort on the part of Gilgen, Arends and Marte to sell the property, on August 21, 1927, Mrs. Blackburn served a notice of rescission on all the parties named as defendants in this action and followed this with the filing of a suit for rescission of her contract, charging fraud and deceit as against all of the parties defendant. The complaint in that action, which for the purpose of brevity will be referred to as the first action, contains substantially the same matters set forth in the complaint filed in this action, the only difference being as to the prayer for relief. The notice of rescission served on

the McCoys on August 21, 1927, was the first intimation that they had that Mrs. Blackburn was in any way interested in the property. All of the parties defendant filed answers and the action was set for trial in June, 1928. Shortly before the date set for trial of this first action, Mrs. Blackburn's counsel requested of counsel for the McCoys that a conference be had with the view of attempting a settlement of the controversy. Pursuant to this request, a meeting was had between the McCoys and their attorney, and Mrs. Blackburn and her attorney, at which conference it was agreed upon between them, that inasmuch as there had been a default in the interest on Henderson's note to McCoys, they would take steps to clear the title to the property, and when this was accomplished, they would give to Mrs. Blackburn a six months' option to purchase the property at the original option price of $146,250 given to Henderson; that in the event that Mrs. Blackburn exercised the option, the McCoys would credit upon the purchase price the amount which she had paid on account of the purchase by her of a one-half interest in the property from Henderson. In turn Mrs. Blackburn agreed to dismiss the first action.

McCoys informed Henderson of their tentative agreement with Mrs. Blackburn and proposed that to save a lawsuit to terminate their agreement with him, he arrange for an assignment of all the beneficial interests in the declaration of trust to them, in which event they, the McCoys, would cancel and deliver to him his promissory note for $121,250. Also, that in consideration of the new option which the McCoys would then give to Mrs. Blackburn, she would dismiss the pending action. Henderson explained the proposal to Gilgen, Marte and Arends, who upon the understanding that in this new arrangement they would get their respective notes back from Henderson and the controversy which formed the basis for Mrs. Blackburn's suit would be settled, consented to the proposal and assigned to Henderson their respective beneficial interests in the trust. Mrs. Blackburn also assigned to Henderson her beneficial interest and received from Henderson her note to him for $60,750. Thereupon Henderson turned over to the McCoys all of the beneficial interests in the declaration of trust and received back from the McCoys his note for $121,250. Mrs. Blackburn

dismissed her action and received from the McCoys a six months' option as had been agreed between them. Failing to negotiate a sale for the property within the life of the option Mrs. Blackburn five days before its expiration filed the present action for damages, naming, with the exception of one Thomas S. Clark, the same persons as defendants as she named in her first action which had been dismissed.

In view of the conclusions arrived at on the points raised on appeal, we do not deem it necessary to recite in detail either the allegations of fraud and deceit as set forth in the complaint, or the evidence from the voluminous transcript bearing upon these allegations.

In support of her appeal from the judgment in favor of the Title Guarantee and Trust Company, appellant Blackburn urges that the trust company as escrow holder was her agent, and therefore bound to advise her that the Henderson option from the McCoys provided for a purchase price of $146,250, instead of a price of $174,000, which was the basis of her purchase; that if the trust company had given her that information she would not have entered into a transaction for the purchase on the basis of $174,000; that by reason of its failure to so inform her, the trust company is liable in damages for the amount of the loss she sustained in her venture with Henderson and his associates.

■ There seems to be a divergence of opinion in the books as to whether the status of an escrow holder is that of an agent or trustee for the parties to the escrow. Conceding that the escrow instructions created an agency in the defendant Title Guarantee and Trust Company for the several parties to the escrow, as contended for by appellant Blackburn, it could not be a general agency for each one of the parties because their interests were conflicting. The status could only properly be classified as an agency on the theory that there was a limited agency as to each party to the escrow, whereby the duties and obligations owing by the escrow holder to each would not conflict with the duties it owed to the others. The usual purpose that prompts the creation of an escrow is the desire of persons dealing at arm's length with each other to have their conflicting interests handled by one person in such a manner as to adequately protect the rights of each of the parties to the transaction. The fundamental principles underlying the ob-

ligations of a general agency would not, and could not, tolerate the operation of an escrow, such as we have here, as a general agency. If the several escrow instructions create in the escrow holder an agency, it must be one limiting the obligations of the escrow holder to each party to the escrow in accordance with the instructions given by such party. This in practice has been and is the underlying principle that has made possible the development of the escrow method of handling transactions which has become such an important factor in conveyancing and other business activities. Upon this theory, it has been given almost universal judicial sanction in this and other jurisdictions. This theory of limited agency finds support in the following cases: *Nelson* v. *Ashton-Jenkins Co.*, 66 Utah, 351 [242 Pac. 408]; *Bailey* v. *Security Trust Co.*, 179 Cal. 540 [177 Pac. 444]; *Thornhill* v. *Olson*, 31 N. D. 81 [153 N. W. 442, Ann. Cas. 1917E, 427, L. R. A. 1916A, 493]; *Smith* v. *Griffith*, 105 Kan. 357 [184 Pac. 725]; *Feisthamel* v. *Campbell*, 55 Cal. App. 774 [205 Pac. 25]; *Seibel* v. *Higham*, 216 Mo. 121 [115 S. W. 987, 129 Am. St. Rep. 502].

It is not claimed by appellant Blackburn that the defendant failed in any respect to carry out the specific instructions given in her escrow instructions. These instructions constituted the full measure of the obligations which the trust company assumed to perform and therefore owed to her. Mrs. Blackburn did not include in her instructions any demand to be informed as to the price Henderson was paying the McCoys for the property under his agreement with them. Hence the escrow holder was under no obligation to give Mrs. Blackburn this information, and not failing in the performance of any obligation it owed Mrs. Blackburn, defendant Title Guarantee and Trust Company is not liable to her for any loss she suffered in her transaction involving the purchase of the property from Henderson.

In none of the cases cited by appellant Blackburn in her appeal against defendant Title Guarantee and Trust Company do we find any views expressed in conflict with the views we have here indicated. We therefore conclude that her appeal from the judgment in favor of defendant Title Guarantee and Trust Company must be denied.

Nor is there merit in appellant Blackburn's appeal from the judgment in favor of the defendants McCoy. It is

urged in support of this appeal that, because the money received by the McCoys from Henderson in payment of his obligation to them was money that had been paid by appellant Blackburn under her contract with Henderson, the McCoys were bound to return this money to her for the reason that she had been induced through fraud and deceit to pay it to Henderson.

In support of this contention, appellant Blackburn cites the rule that ''the principal who accepts the benefits of the transaction negotiated by his agent adopts with such benefits the loss taken to procure them''. The weakness of this argument arises from the fact that there is nothing in the evidence to support a finding that Henderson was the agent of the McCoys in the transaction wherein appellant Blackburn purchased a one-half interest in the property. The McCoys were in no legal sense, parties to the contract between Henderson as seller and Blackburn et al., as buyers, in which transaction Mrs. Blackburn paid to Henderson the $25,000 which he used to pay his obligation to them. Nor did they have any knowledge of either the source from whence it came, or the representations that induced Mrs. Blackburn to deposit it in escrow. Under these circumstances it cannot be said that when it came into the hands of the McCoys there was attached to it any taint of fraud that required them in good conscience to pay it over to Mrs. Blackburn.

A second answer to appellant Blackburn's claim against the McCoys is found in the fact that there was as between them an accord and satisfaction as to the matters set forth in the complaint in the first action by reason of the agreement whereby the McCoys gave to Mrs. Blackburn a new option and appellant Blackburn dismissed her rescission action. This point will be discussed further in considering defendants' appeal.

As to the appeals of defendants Henderson, Marte, Gilgen and Arends, it is contended in their behalf: First, that the evidence does not support the court's finding that Henderson and Marte, or either of them conspired with Gilgen and Arends to defraud plaintiff by causing Gilgen and Arends to make fraudulent and untruthful representations to her in order to induce her to purchase the one-half interest in the property. This contention has merit.

There is no competent evidence in the record that will support a finding that either Gilgen or Arends in their dealings with Mrs. Blackburn was the agent of Marte, or that Marte had at that time any interest in the deal they were working on. Not until they came to him with the proposal that he join them as purchasers did he know of the plan which had been agreed to between Mrs. Blackburn and Gilgen and Arends for the purchase of the property. At that time all of the alleged misrepresentations that induced Mrs. Blackburn to make her purchase had been made to her by Gilgen and Arends. We are unable under the undisputed facts in the record to determine that upon any legal basis Marte can be held liable for the fraud and deceit practiced by Gilgen and Arends on Mrs. Blackburn.

Nor does the evidence justify the court's findings that Henderson was involved in a conspiracy to defraud Mrs. Blackburn or that he was responsible for any of the misrepresentations made to her by Gilgen and Arends. Gilgen and Arends were not the agents of Henderson. Henderson as seller was dealing at arm's length with Gilgen, Arends and Marte as buyers. It does not appear that Henderson had any knowledge that Mrs. Blackburn was being contacted by Gilgen and Arends as a prospective buyer of the property, nor did he know she was a purchaser until after she put her money and instructions in escrow. It does not appear that at any time he directed or encouraged Gilgen and Arends or either of them to make any representations to Mrs. Blackburn about the property. Under this state of facts, Henderson cannot be held responsible for the fraud and deceit of Gilgen and Arends.

As to the appealing defendants' second point, that the evidence fails to support any of the court's findings as to fraud practiced and misrepresentations made by any of them, we cannot give assent to this contention. Without reciting in detail the evidence in the record bearing upon this point, we deem it sufficient to meet the requirements of this opinion to say that there is sufficient evidence in the record to support the court's findings of fraud and deceit practiced upon Mrs. Blackburn by defendants Gilgen and Arends and which induced her to invest her money in the deal.

The last point urged by defendant-appellants, which we feel requires our consideration, is that plaintiff-appellant waived her right of action against all of the defendants by the consummation of the agreement between her and the McCoys, whereby she, in consideration of the dismissal of her first action, received from the McCoys the six months' option to purchase the property at the original option price to Henderson. This contention is based upon two considerations which find support in the books. First, that the agreement whereby Mrs. Blackburn received the six months' option and dismissed her first action, constituted a settlement of the controversy upon which the action was predicated as to all of the named defendants, and second, that by reason of the fact as found by the court that the agreement between the McCoys and Blackburn constituted a settlement between them as to any claim Mrs. Blackburn might have had against the McCoys arising out of "the matters and things in this action", under the well-established rule that a settlement by one joint tort-feasor with the claimant that releases such tort-feasor from liability for the wrong, releases all of the joint tort-feasors, Mrs. Blackburn is estopped from maintaining the action against any of the defendants.

In support of the first consideration urged, appellants cite the case of *Schmidt* v. *Mesmer*, 116 Cal. 267 [48 Pac. 54], wherein is quoted with approval from the opinion in *St. John* v. *Hendrickson*, 81 Ind. 350, the following statement of the law which we deem pertinent to the facts in this case: "We do hold that where a party, with full knowledge of all the material facts, does an act which indicates his intention to stand to the contract, and waive all right of action for fraud, he cannot maintain an action for the original wrong. . . . Where the affirmance of the contract is equivalent to a ratification, all right of action is gone. . . . Nor are we unmindful of the settled rule that the defrauded party has an election of remedies. . . . We do decide that where a party, with full knowledge, declines to repudiate a transaction known to him to be fraudulent, and fully and expressly ratifies it, he can neither rescind nor maintain an action for damages." The principle has been accorded recognition in the following cases: *Ball* v. *Warner*, 80 Cal. App. 427 [251 Pac. 929]; *Edwards* v. *Roberts*, 7

Smedes & M. (Miss.) 544; *Negley* v. *Lindsay*, 67 Pa. 217 [5 Am. Rep. 427] ; *Nounnan* v. *Sutter County Land Co.*, 81 Cal. 1 [22 Pac. 515, 6 L. R. A. 219].

The undisputed facts bearing upon the negotiations and the agreement resulting therefrom, whereby Mrs. Blackburn secured a new option from the McCoys and the return from Henderson of her note for $60,750 in consideration for which she dismissed her first suit, justifies but one reasonable conclusion, and that is, that it was the intention of Mrs. Blackburn and the belief of all of the other parties in co-operating so as to make possible an early fulfillment of the agreement, that the new arrangement would terminate the controversy and litigation that had as its basis the alleged false representations which induced Mrs. Blackburn to invest her money in the property. That Mrs. Blackburn did not succeed in selling the property during the life of the option in no way militates against the legal effect of the agreement by which she obtained the option and her note. As to defendants McCoy and Henderson, with whom Mrs. Blackburn dealt directly in the consummation of the agreement, it would seem that the rule above stated is clearly applicable. ▮ As to the other defendants, there being no direct negotiations or agreement between them and Mrs. Blackburn, that they are entitled to the benefit of this rule is not free from doubt. It seems incredible that Mrs. Blackburn in her negotiations with the McCoys and Henderson did not know that the other holders of beneficial interests were being contacted for the purpose of inducing them to assign their interests to Henderson, in order that her agreement with the McCoys might thus be consummated.

▮ Whatever of weakness there may be in the argument that the above-quoted rule is applicable as a defense for Gilgen, Marte and Arends, the second consideration urged under this point would seem to be a complete answer to plaintiff's right to maintain this action against them. The rule that the release of one joint tort-feasor operates in law to release all of the joint tort-feasors from the claim of the injured party is well established in California. (*Tompkins* v. *Clay Street R. R. Co.*, 66 Cal. 163 [4 Pac. 1165] ; *Adams* v. *Southern Pac. Co.*, 204 Cal. 63 [266 Pac. 541, 57 A. L. R. 1066] ; *Hawber* v. *Raley*, 92 Cal. App. 701 [268

Pac. 945]; *Chetwood* v. *California Nat. Bank,* 113 Cal. 414 [45 Pac. 704].)

Inasmuch as the opinions in the cases cited contain an extended discussion of the considerations which are held to justify the rule, we do not feel it will serve any useful purpose to extend this opinion with a repetition of such discussion. In making this application of the rule to the appealing defendants, we are not unmindful of the fact that the trial court held, and properly so, that the McCoys were not in any way responsible for the fraud and deceit practiced upon Mrs. Blackburn. Under the rule as established in California the fact that the one released may not be guilty of the wrong charged does not affect the operation of the rule.

In view of our conclusions upon the points described, we do not deem it necessary to give consideration to other points raised in the briefs filed, as our views upon these points would not affect the conclusion arrived at.

The judgment in favor of defendant Title Guarantee and Trust Company and Frank McCoy and Florence McCoy is affirmed. The judgment in favor of plaintiff Harriet R. Blackburn and against Edward A. Henderson, Lawrence C. Gilgen, Edward Arends and Walter Marte is reversed.

Conrey, P. J., and Houser, J., concurred.