[Civ. No. 16775. Fourth Dist., Div. One. Dec. 21, 1978.]

MARCIA V. AXLEY, Plaintiff and Appellant, v.
TRANSAMERICA TITLE INSURANCE COMPANY,
Defendant and Respondent.

2

[redacted]

## COUNSEL

Jeffrey B. Norris for Plaintiff and Appellant.

Alfred Fadel and Gerald T. Yoshida for Defendant and Respondent.

## OPINION

**HARELSON, J.***—Marcia V. Axley appeals from a summary judgment entered against her in favor of Transamerica Title Insurance Company (Transam).

Axley sued numerous parties in connection with a real estate transaction. The appeal here involves the sixth cause of action which alleges a breach of duty on the part of Transam, the escrow holder in the transaction.

---

*Assigned by the Chairperson of the Judicial Council.

On or about January 13, 1975, Axley entered into an escrow agreement with James M. Camp and Anna L. Camp for the sale by Axley of certain real property to the Camps for the sum of $48,000. $31,500 of the purchase price was to be paid in cash and $16,500 by a promissory note secured by a trust deed on:

Parcel 1: Lot 7 of Nances Acres, County of San Diego.

Parcel 2: A portion of lot 1, block D, of Encinitas Highlands, County of San Diego.

The escrow agreement provided that the trust deed and note was to be:

"Subject Only to:

"(1) 2nd installment taxes for the fiscal year of 1974-1975;

"(2) Covenants, conditions, restrictions, and easements of record:

"(3) A first deed of trust of record, in favor of Oceanside Federal, in the original amount of $26,000.00 recorded July 3, 1962, as File No. ]]3267 of Official Records. Affects parcel 1.

"(4) A first deed of trust of record, in favor of Oceanside Federal, in the original amount of $31,200.00 recorded April 26, 1973 as File No. 110474.

"(5) A second deed of trust, executed by above named vestee, in favor of Marsha V. Axley, a widow, securing a note for $16,500.00 payable in monthly installments of $182.70 or more, including interest at the rate of 10% per annum from close of escrow; first payment 30 days from close of escrow and continuing monthly thereafter until 3 years from close of escrow, at which time the unpaid balance of principal and accrued interest shall become due and payable. Said note and deed of trust to contain: If the trustor shall convey or alienate said property or any part thereof or any interest therein or shall be divested of his title in any manner—way, whether voluntary or involuntary any indebtedness or obligation secured hereby, irrespect of the maturity date expressed in any note evidencing the same, at the option of the holder hereof and without demand or notice shall become due and payable immediately. Said deed of tr affects Parcel 1 and 2. Escrow holder is instructed to insert

"Your usual form CLTA Loan policy to contain Endorsement 107.1 when issued and the liability of your company shall not exceed the sum of $10,000.00 as to Parcel 1 of said land, and shall not exceed the sum of $6,500.00 as to Parcel 2 of said land."

Neither parcel 1 nor 2 above described was the property purchased by the Camps from Axley.

On March 12, 1975, an amendment was made and executed:

"Buyers herein will cause you to be handed proceeds of a new conventional loan in the amount of $31,500.00 payable in monthly installments, including interest at the rate of 11% per annum, with buyers loan fee of 3% of new loan amount, plus $150.00.

"Buyers will hand you deed of trust and note as set forth on page two, paragraph (5) of original escrow instructions dated January 13, 1975, which you will deliver when you can comply with all instructions and when you can issue your usual form CLTA Loan policy of title insurance with liability of $16,500.00 on:

"*Parcel 1*: Lot 7 of Nances Acres, County of San Diego, State of California according to Map thereof No. 2884, filed in the office of the County Recorder of San Diego County July 2, 1952.

"*Parcel 2*: Lot 25 of the resubdivision of Torrey Pines Heights subdivision Unit No. 1, City of San Diego, County of San Diego, State of California, according to Map thereof No. 7510, filed in the office of the County Recorder of San Diego County, December 19, 1972.

"Subject to: (3) Deed of trust, securing a note in the original amount of $26,000.00, recorded July 3, 1962, File No. 113267, in favor of Oceanside Federal; as to Parcel 1;

"(4) Deed of trust, securing a note in the original amount of $35,000.00, recorded February 7, 1974, File No. 74-032928, in favor of Marjorie Iris Cope; as to Parcel 1;

"(5) Deed of trust, securing a note in the original amount of $10,000.00, recorded February 11, 1974, File No. 74-035274, in favor of Norbert A. Inkel, et ux; as to Parcel 1;

"(6) Deed of trust, securing a note in the original amount of $42,960.00, recorded July 25, 1973, File No. 73-205156; as to Parcel 2;

"(7) Deed of trust, securing a note in the original amount of $10,000.00, recorded August 28, 1973, File No. 73-242167, in favor of Colin L. Walker et ux, et al; as to Parcel 2;

"(8) The Effect of an abstract of judgment for $100.00 Case No. 318093, in favor of Emery Steven Fleming, against Albert Joseph Jehorek and F. James Dear, His Attorney, recorded March 11, 1971, as Instrument No. 46716.

"(9) A Deed of Trust, executed by buyers, in favor of Marsha V. Axley, a widow, securing a note for $16,500.00, subject to the terms and conditions as set forth in the original escrow instructions dated January 13, 1975. Said Deed of Trust affects Parcels 1 and 2."

This amendment was signed by Axley and delivered by Axley's son, Greg, to Transam on March 14, 1975. The note and deed of trust securing the same in favor of Axley on parcels 1 and 2 described in the amendment were duly executed and upon close of escrow the deed of trust was duly recorded. The escrow was closed in accordance with the escrow instructions as amended.

Thereafter the trustees under the prior deeds of trust, pursuant to power of sale and after giving notices as required, sold parcels 1 and 2 at public auction. The proceeds of the sales did not provide a sufficient sum to pay Camps' obligation to Axley.

Axley's sixth alleged cause of action against Transam alleges in part:

"As a licensed title insurance company and as the escrow agent in the transaction described hereinabove, Defendant TRANSAMERICA TITLE INSURANCE CO., INC. owed to Plaintiff the duty to exercise reasonable care and diligence as required by the custom and practice in the title insurance and escrow businesses in its review of said transaction.

"On or about March, 1975, at San Diego, California, Defendant TRANSAMERICA TITLE INSURANCE CO., INC. approved a fourth deed of trust in favor of Plaintiff in the transaction described in the first, second and third causes of action set forth above, and allowed escrow to close in said transaction. In so doing, said Defendant induced Plaintiff to accept

two fourth deeds of trust from Defendants JET REALTY, SOUTH COAST MORTGAGE CO., JAMES M. CAMP and ANNA L. CAMP. Such act or non-act of Defendant TRANSAMERICA TITLE INSURANCE CO., INC. was not in accordance with reasonable standards of care as required in the title insurance and escrow businesses and thus, said Defendant's act or non-act was a failure to exercise reasonable care and diligence owed to Plaintiff."

Axley asserts that by reason of such alleged acts and nonacts she is entitled to damages for the amount of her promissory note, for emotional distress and mental anguish, attorney fees and exemplary damages for oppression.

In her appeal Axley states that the sixth cause of action was premised on a theory of negligence and breach of fiduciary duty in that Transam failed to (1) call the substituted security to her specific attention and to inform her of the apparent diminution in security occasioned by the amended escrow instruction and (2) explain to her that the substituted security was already so encumbered as to render the original security requirements impossible of performance.

Transam maintains that its only duty was to follow the instructions that were signed and delivered by the parties thereto.

Transam moved for a summary judgment on the basis that Axley's action had no merit and there was no triable issue of material fact. Summary judgment is proper where the moving party shows through supporting affidavits that the action has no merit, *unless* the opposing party, through its affidavits, raises a triable issue of material fact. (Code Civ. Proc., § 437c.)

Transam's declarations in support of its motion incorporated the depositions of Axley and her son Greg. In summary, these depositions included statements by Axley that she had never talked to anyone at Transam; that she does not recall seeing or signing the escrow instruction documents but that her signature appears on them and she must have signed them; that she relied "100%" on her realtor Frances Jackson; that she left everything in the transaction to Jackson who assured her there was nothing to worry about; that she knows of no facts which would show that Transam "approved" any deeds of trust; and that she does not know any facts which would show Transam "induced" her to accept two fourth deeds of trust. Statements of her son Greg include: that he recalls the

amendment to escrow which he "OK'd" by notation in the margin of the document; that he overheard Jackson explain it to his mother; that his mom told him to deliver the amendment to Transam and that he did so; that someone at Transam mentioned to him that the property securing Axley's note had "a lot of money on this one . . . you're in line with everyone else" and he replied the realtor had said it was no big deal; that even so he did not know his mom's deeds would not have priority; and Greg's definition of "approved"—that since Transam was "doing the title insurance and . . . all the stuff related . . . they were the governing body in part of this deal . . . they would have approved or disapproved it. And since they let it go through, I assume they approved it."

In opposition to the motion for summary judgment Axley merely incorporated some additional portions of Greg's deposition. This included testimony that there was a possibility the statements by someone at Transam about the number of prior deeds on the security property might have been made after escrow closed; and the same testimony concerning the definition of "approved." He did not have any facts that would show Transam actually approved a fourth deed of trust in favor of his mother; and he knew of no facts to show that his mother was induced by Transam to accept two fourth deeds of trust.

Transam's motion for summary judgment was granted and the judgment entered. ▪ "The duty of an escrow holder is to comply strictly with the instructions of his principal." (*Wade* v. *Lake County Title Co.*, 6 Cal.App.3d 824, 828 [86 Cal.Rptr. 182]; *Amen* v. *Merced County Title Co.*, 58 Cal.2d 528, 531 [25 Cal.Rptr. 65, 375 P.2d 33].)

As Transam points out, the agency created as an escrow holder is limited, rather than general. "[I]t is treated as a limited agency wherein the obligations of the escrow holder to each party are strictly in accordance with the escrow instructions given by that party." (*Lee* v. *Title Ins. & Trust Co.*, 264 Cal.App.2d 160, 162 [70 Cal.Rptr. 378]; *Blackburn* v. *McCoy*, 1 Cal.App.2d 648, 655 [37 P.2d 153].)

▪ " 'When a party moves for summary judgment [under section 437c of the Code of Civil Procedure], the trial court's function is to determine whether the case presents a triable issue of fact—issue finding, not issue determination, is the court's function at this stage in the proceedings.' " (*Hale* v. *George A. Hormel & Co.*, 48 Cal.App.3d 73, 81 [121 Cal.Rptr. 144]; *Walsh* v. *Walsh*, 18 Cal.2d 439, 441 [116 P.2d 62].)

It apparently is not claimed by Axley that Transam failed in any respect to carry out the specific instructions given in her escrow instructions nor are there any facts contained in the papers produced by her which in any way tend to show that Transam failed to comply with her instructions.

It is also the duty of an escrow holder to exercise reasonable skill and ordinary diligence in its employment, and if the escrow holder acts negligently, it is ordinarily liable for any loss occasioned by its breach of duty (*Wade* v. *Lake County Title Co., supra,* 6 Cal.App.3d 828; *Amen* v. *Merced County Title Co., supra,* 58 Cal.2d 532). "[I]t is generally held that no liability attaches to the escrow holder for his failure to do something not required by the terms of the escrow or for a loss incurred while obediently following his escrow instructions." (*Lee* v. *Title Ins. & Trust Co., supra,* 264 Cal.App.2d 160, 163.)

In support of her contention, however, Axley cites *Contini* v. *Western Title Ins. Co.,* 40 Cal.App.3d 536, 547 [115 Cal.Rptr. 257]: "An escrow holder is a fiduciary and like any other fiduciary is under a duty to communicate to his principal knowledge acquired in the course of his agency with respect to material facts which might affect the principal's decision as to a pending transaction, particularly where, as here, he knows that the principal is looking to him for protection as to those very facts of which he has knowledge."

The *Contini* case is not in point as there the escrow holder actually missed a matter of record, namely, a lis pendens; it was negligent in making the search and misrepresented the state of the title. Here the prior encumbrances on Axley's land security were all listed on the amendment signed by her and there was no showing that Axley was relying on Transam to do anything other than to comply with her instructions. In fact, the papers produced at the hearing contain uncontested statements by Axley that no one at Transam ever talked to her about anything.

Axley also cites *Ruth* v. *Lytton Sav. & Loan Assn.,* 266 Cal.App.2d 831 [72 Cal.Rptr. 521].

The *Lytton* case is distinguishable. There City Title, as escrow agent, had instructions from the plaintiffs that they required first trust deeds as their security. The detailed instructions incorporated an agreement to subordinate plaintiffs' trust deeds to a construction loan of a specified amount and with a designated rate of interest. Prior to close of escrow

City Title did not advise plaintiffs that they were receiving second deeds of trust instead of first deeds of trust to be subordinated nor did it advise plaintiffs that Lytton's escrow instructions prohibited subordination. The court held that in so failing to advise plaintiffs, City Title was negligent, breached plaintiffs' escrow instructions and breached its fiduciary duty to plaintiffs.

The facts here are quite unlike those in the *Lytton* case. "A summary judgment is proper if the action has no merit and there is no triable issue of fact." (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell,* 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].)

Here Transam's declarations in support of its motion for summary judgment demonstrate an absence of an essential element of Axley's case, namely, failure of Transam to follow instructions or that Transam acted negligently; Axley's declarations in reply do not show that a triable issue of fact with respect to that essential element exists.

Judgment affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.