[Civ. No. 56411. Second Dist., Div. One. Apr. 1, 1980.]

WENDELL K. SCHAEFER et al., Plaintiffs and Appellants, v. MANUFACTURERS BANK, Defendant and Respondent.

72

**Counsel**

Robert T. Moulton for Plaintiffs and Appellants.

Schwartz, Alschuler & Grossman, Marshall B. Grossman and Robert A. Shlachter for Defendant and Respondent.

**Opinion**

**WEISZ, J.**[*]—Plaintiffs Schaefer appeal from a summary judgment in favor of defendant Manufacturers Bank in a case involving many defendants and a somewhat complex factual setting. Hereinafter, the parties will simply be referred to by name.

## Factual Setting

As of April 30, 1973, the Schaefers owned a piece of real property, which they were to sell to the Jacksons for $51,500, $35,000 to be paid through escrow and emanating from a loan to be made by an outside lender on the property itself, plus an additional $16,500 to be paid outside of escrow. At least, this was the contract as seen in the original escrow instructions. By May 7, the parties had signed outside of escrow a side agreement in which the $35,000 was to be credited to the Jacksons' account in the escrow, but the Schaefers were to receive a second trust deed on the subject property in the sum of $43,000, assignment of a $39,000 second trust deed on the so-called August property, and also a trust deed and note for $3,650 on property located on Sherbourne Drive executed by Johnny and Bette Jan Parker.[1] Bette Jan Parker, a

---

[*]Assigned by the Chairperson of the Judicial Council.

[1]This is apparently one more chapter in an old, old story. The Schaefers apparently decided to deal directly with the Jacksons, bypassing the broker and dealing outside of escrow, no doubt being pleased at giving up $35,000 in cash from the loan company in

party to the small trust deed, was also the escrow officer handling the Schaefer-Jackson escrow, at Manufacturers Bank.

Later amendments to the escrow instructions accomplished further changes, not necessarily in complete consonance with the May 7 side agreement. By May 24, the day before escrow closed, the instructions specified that $24,500 was paid in cash outside of escrow and appropriate credits and debits were to be made accordingly; and the proceeds of the loan were to be debited to pay real estate broker's commission, pay off prior loans, and the remaining monies were to be paid, on behalf of the Schaefers, to one Christine Gaines.

The escrow closed on May 25, on which date it appears that the prior trust deed on the August property was foreclosed; thereafter, the property which was the subject of the escrow was also foreclosed, neither sale bringing enough to cover more than the primary encumbrances, costs, etc.[2] Thus, the record shows that all the documents (except the deed and the new first deed of trust on the real property being transferred) relating to the various trust deeds were given to the Schaefers outside of escrow; they proved worthless, except for the Parker note; and thus the Schaefers ended with a loss.

## THE ISSUE

Boiled down, then, the situation can be stated in somewhat this fashion: Where the plaintiff has acted totally outside of escrow as to the items which have caused damage, may they succeed in holding the escrow company? Upon the showing here made, the answer has to be in the negative.

## CONTENTIONS

### A. *Discovery*

Before we can proceed to examine the contentions of appellant, it is necessary to explicate another confusing situation. The defense motion

---

favor of three trust deeds having apparent values of $85,650. As later appears, the inevitable happened and the Schaefers found they had acquired an expensive lawsuit rather than valuable trust deeds.

[2]Surprisingly enough, the record shows that the Parker note was due at the time it was received by the Schaefers; that Mr. Schaefer knew there had never been any payments made thereon because he had been so informed by both Mrs. Parker and Mr. Jackson; and it was later paid in full.

for summary judgment came on for hearing after filing on November 13th; plaintiff then filed motions to compel further answers to requests for admissions, and to compel productions of documents, both on November 21st. The summary judgment was heard first, but submitted in order that any results of the discovery motions might be considered in connection with the motion for summary judgment. Later, all the motions having been submitted, the discovery motions were denied and the summary judgment motion was granted.

Discovery has an important bearing on summary judgment procedure since it can serve as the basis for making or resisting such a motion (*Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 779 [149 Cal.Rptr. 499]; *DeSuza* v. *Andersack* (1976) 63 Cal.App.3d 694, 698 [133 Cal. Rptr. 920]), a fact clearly recognized by the Legislature when it provided in 1973 that the motion could be supported or opposed by "admissions, answers to interrogatories, depositions" (Code Civ. Proc., § 437c). ■ The orders with respect to discovery may be reviewed on appeal from the final judgment (*Crumpton* v. *Dickstein* (1978) 82 Cal. App.3d 166, 169 [146 Cal.Rptr. 840]), but may be reversed only where it appears that the trial court abused the discretion vested in it (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 171 [84 Cal. Rptr. 718, 465 P.2d 854]; *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 378-384 [15 Cal.Rptr. 90, 364 P.2d 266]; *Adams* v. *Superior Court* (1957) 49 Cal.2d 427, 429 [317 P.2d 983]).

The discovery motions were filed at a time when the cause had been on file three and one-half years, extensive discovery had been completed, mandatory settlement and trial were coming on in the immediate future, and it appeared that the motions may well have been a dilatory tactic. Although the court below did so on its own motion, counsel did not even seek "a continuance to permit...discovery to be had" as provided in the summary judgment statute (Code Civ. Proc., § 437c).

■ On the motion to produce, no prior demand in writing had been made, and the motion was properly denied without respect to the merits thereof. (*People* ex rel. *Dept. of Transportation* v. *Superior Court* (1976) 60 Cal.App.3d 352, 358 [131 Cal.Rptr. 476].) Even were one to consider the merits, the item sought was notes taken by an attorney of a conversation with an employee of the client, not discoverable due to privilege (*D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d

723, 736-737 [36 Cal.Rptr. 468, 388 P.2d 700]). The showing on the part of Manufacturers Bank as to the privilege was not contradicted, and the ruling was correct. (*Romo* v. *Southern Pac. Transportation Co.* (1977) 71 Cal.App.3d 909, 922 [139 Cal.Rptr. 787].)

Turning to the interrogatories and requests for admissions, again no abuse of discretion appears. Indeed, the opposite is true; it is appellants who seek to abuse the process of discovery. They asked in an interrogatory, as a fairly typical example, that defendant Manufacturers Bank "[s]tate the complete name, address and telephone number of the person who prepared Exhibit '1' to plaintiffs' complaint." The answer was, that that defendant had neither personal knowledge or information from other sources, had made reasonable inquiry and the information known was insufficient to permit it to answer. In the motion, appellant sought further answer to the interrogatory, despite the fact that plaintiffs were signatories to the document and had presumptive knowledge of its source; that the document was never deposited in or made a part of the escrow; and there was never any showing that Manufacturers Bank had anything whatever to do with its preparation or access to any such knowledge.

It is one thing for a party, faced with an interrogatory the answer to which is presumably within its knowledge, to deny an answer for lack of information, and quite another in a situation like that here presented. As the cases indicate, the purpose of discovery is to permit access to matter known to, or within the control of, the other party (*Scherrer* v. *Plaza Marina Coml. Corp.* (1971) 16 Cal.App.3d 520, 524 [94 Cal. Rptr. 85]; *Peterson* v. *City of Vallejo* (1968) 259 Cal.App.2d 757, 782 [66 Cal.Rptr. 776]; *Fairfield* v. *Superior Court* (1966) 246 Cal. App.2d 113, 119 [54 Cal.Rptr. 721]); the majority of the interrogatories as to which further answers were sought were clearly not in that category. Thus, an entire series of interrogatories sought information with respect to documents which clearly never passed through or were part of the escrow relating to the property owned by the Schaefers. Under these circumstances, the trial court very properly denied the motions; the material sought was certainly in the control of either the Jacksons, the real estate brokers, the parties to the documents sought, or the former escrow officer of the Manufacturers Bank, all of them parties to the action. ■ Where the information sought is equally or more readily available to the party seeking it than the party from whom it is sought, abuse of discretion cannot be claimed.

### B. *Summary Judgment*

The basic rules as to summary judgment are well-settled, however difficult they may be to apply in any particular instance. The procedure envisioned by the Legislature is relatively clear-cut, and is set forth in section 437c of the Code of Civil Procedure. A party claiming either a perfected cause of action or a clear defense may bring on a motion, supported by (and, of course, later resisted by) affidavits or declarations made on personal knowledge, containing admissible evidence, and must contain an affirmative showing that the person is competent to testify to the facts set forth. From and after 1973, the legislation has very properly added that admissions, answers to interrogatories, depositions, and matters of which judicial notice may be taken can also be utilized. Thus, the range is made broader, and the showing far more complete than heretofore provided.

In examining the matter before the trial court in this case, the only opposition declaration is that of plaintiffs' counsel, who clearly is not a competent affiant with respect to any facts admissible at trial. This declaration is a pastiche of improper matter: legal citations; argumentative assertions as to fact, law, and the legal contentions of the opposite party; statements with respect to prior discovery efforts; even gross characterizations. It was properly ignored in all respects, except to the extent that it adverted to admissions, answers to interrogatories, etc. Thus, we must turn to the showing of Manufacturers Bank.

■ Essentially, theirs was a dual attack, to show that the action had no merit, and that no triable issue of fact was presented. Their position was that the uncontroverted facts showed they had breached no duty as a matter of law, and that the Schaefers suffered no damage in any event as a result of any action or inaction on their part.

On the first prong, the facts clearly showed that the escrow, as such, had very little to do in this transaction. It transferred title from the Schaefers to the Jacksons, paying off a prior encumbrance on that property with the proceeds of a new first trust deed and note transaction, and the remainder of the monies from the new loan were paid out according to the instructions. The escrow did not process any of the other transactions at all, in that the monies called for were paid outside of escrow; assignments of the encumbrances on the August and Sherbourne properties were given the Schaefers by the Jacksons outside of

escrow; even the new second trust deed on the property involved was handled outside of the escrow.

■ Turning to the duty of an escrow, the most expansive statement is found in *Spaziani* v. *Millar* (1963) 215 Cal.App.2d 667, 682-683 [30 Cal.Rptr. 658], where the court stated, omitting all citations: "An escrow holder is the agent of all the parties to the escrow at all times prior to performance of the conditions of the escrow [citations]; bears a fiduciary relationship to each of them [citation]; and owes an obligation to each measured by an application of the ordinary principles of agency. [Citation.]

"It is the duty of an escrow holder to comply strictly with the instructions of his principal [citations], and if he disposes of the property of his principal in violation of these instructions, or otherwise breaches that duty, he will be responsible for any loss occasioned thereby. [Citations.] Likewise, it is the duty of an escrow holder to exercise ordinary skill and diligence in his employment [citations], and if he acts negligently he is responsible for any loss occasioned thereby, subject to the rules ordinarily applicable in the premises. [Citations.]"

Despite the generality of the foregoing, it is clear that the agency which exists (and the obligation pursuant thereto) is a limited one. "If the several escrow instructions create in the escrow holder an agency, it must be one limiting the obligations of the escrow holder to each party to the escrow in accordance with the instructions given by such party." (*Blackburn* v. *McCoy* (1934) 1 Cal.App.2d 648, 655 [37 P.2d 153].) In the *Blackburn* case, it was held that the escrow holder was not required to indicate to the buyer in that case, his knowledge that his seller was actually in the process of buying the property himself, and reselling to her at a much higher price. Not dissimilar was the situation in *Lee* v. *Title Ins. & Trust Co.* (1968) 264 Cal.App.2d 160 [70 Cal.Rptr. 378], where the plaintiffs alleged that the defendant title company knew the other defendants were defrauding them in connection with a real estate transaction. In affirming after a demurrer had been sustained without leave to amend, the court pointed out that the escrow holder was not charged with having misrepresented any facts connected with the escrow itself, actual collusion with the other defendants or direct involvement in the fraud, or negligence in the handling of the escrow and in carrying out the instructions. The court stated that "it is generally held that no liability attaches to the escrow holder for his failure to

do something not required by the terms of the escrow or for a loss incurred while obediently following his escrow instructions" (264 Cal. App.2d at p. 163, citations omitted).

More recently, *Axley v. Transamerica Title Ins. Co.* (1978) 88 Cal. App.3d 1 [151 Cal.Rptr. 570], affirmed a summary judgment. In that case, which was less strong than our own, the plaintiff was induced by her broker to sign an amended escrow instruction, the effect of which was to cause her deed of trust to be inferior to many more encumbrances than the original instructions.[3] Due to the showing that the escrow had carried out its instructions, and had not conducted itself in a negligent manner with respect to its obligations, summary judgment was held proper.

██ Similarly here. The uncontradicted showing is that the escrow carried out its instructions, complying strictly therewith as was its duty. (*Amen v. Merced County Title Co.* (1962) 58 Cal.2d 528, 531 [25 Cal. Rptr. 65, 375 P.2d 33]; *Wade v. Lake County Title Co.* (1970) 6 Cal. App.3d 824, 828 [86 Cal.Rptr. 182].)

In *Axley*, the representations and statements were made by plaintiff's broker; here, all representations, statements, and delivery of the documents causing the problem were accomplished solely by the buyers, the Jacksons. In *Axley*, as here, it was not that the escrow was at fault, but that the plaintiff unfortunately relied on the representations of others.

██ Summary judgment should be granted in accordance with the legislative procedure only if it appears that the action has no merit and there is no triable issue of fact. (*People* ex rel. *Riles v. Windsor University* (1977) 71 Cal.App.3d 326, 331 [139 Cal.Rptr. 378].) ██ Even in the absence of opposing declarations, since doubt should be resolved in favor of trial, appellate review must include an examination to assure that no triable issue has been presented. (*Rawlings v. D. M. Oliver, Inc.* (1979) 97 Cal.App.3d 890, 896 [159 Cal.Rptr. 119].) As in *Axley*, the declarations in support of the motion "demonstrate an absence of an essential element of [plaintiffs'] case, namely, failure of [the escrow company] to follow instructions or that [the escrow company] acted

---

[3]As here, the prior encumbrances were foreclosed, resulting in loss to the plaintiff. In our case, those prior encumbrances and the inferior ones given plaintiffs did not either go through or even receive mention in, the escrow. In fact, they weren't even delivered until escrow had closed.

negligently; [plaintiffs'] declarations in reply do not show that a triable issue of fact with respect to that essential element exists." (*Axley* v. *Transamerica Title Ins. Co., supra*, 88 Cal.App.3d at p. 10.)

The judgment is affirmed.[4]

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.

---

[4]Manufacturers own showing on the motion discloses that Mrs. Parker, once its employee, had notarized certain of the documents which were handled outside of escrow. All of those documents having been notarized after close of the escrow, when the relationship with Manufacturers Bank and the limited agency were at an end, we need not consider the "issue" as to whether these instruments were properly notarized or not. The notary remains a defendant, and there is no showing that she acted for Manufacturers Bank at that time; in addition, there was a showing that no damage could have been suffered.