[Civ. No. 48838. First Dist., Div. One. Aug. 18, 1982.]

C. S. ZANG, Plaintiff and Respondent, v.
NORTHWESTERN TITLE COMPANY et al., Defendants and
Appellants;
JOSEPH OAKLEY, Defendant and Respondent.

COUNSEL

W. Stephen Wilson; Alice L. Akawie and Buckman, Kass, Morgan & Miller for Defendants and Appellants.

Michael J. Blumenfeld and Blumenfeld & Brody for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

## OPINION

**BANCROFT, J.**[*]—Respondent C. S. Zang filed suit against Joseph Oakley, James Oakley, Michael Priest, Northwestern Title Company of Alameda County (Northwestern) and its escrow employee, Peggy Chance (Chance), on December 23, 1974. Zang's complaint alleged, inter alia, that appellants Northwestern and Chance negligently failed to perform escrow instructions, resulting in the loss of his security interest in real property securing a loan to Oakley. Northwestern alleged in its answer that Zang was contributorily negligent. After a nonjury trial, the court found that Northwestern and Chance were liable for their negligence and rendered a judgment in Zang's favor against them. Northwestern and Chance have appealed. We affirm.

### FACTS

On January 12, 1973, appellant Northwestern, through the actions of its duly authorized employee, appellant Peggy Chance, agreed to act as escrow holder for respondent C. S. Zang and respondent Joseph Oakley. The escrow was opened in order to facilitate a real property financing transaction in which Zang agreed to lend Oakley enough money to pay off the balance of a first deed of trust on real property located on 52d Street in Oakland. The amount required was $12,628.58, payable to Home Federal Savings and Loan Association (Home). Zang also agreed to lend an additional sum to cover other liens on the property, estimated at less than $4,741.42.

In return, Zang was to receive a note, bearing 10 percent annual interest, to be secured by a recorded deed of trust on the 52d Street property. The terms of the financing transaction were explained to Chance when the escrow was opened. Specifically, Chance understood that the money loaned by Zang was to be secured by a deed of trust naming Zang as the beneficiary.

Chance was instructed by Zang and Oakley to carry out her duties as an escrow officer so as to make certain that the necessary sums would be paid and appropriate documents would be prepared and recorded in conformance with the terms of the transaction as explained to her.

[*]Assigned by the Chairperson of the Judicial Council.

When the escrow was opened, Chance knew that Zang was going to the offices of Home that day in order to pay Home the $12,628.58 required to pay off the first deed of trust, then scheduled for immediate foreclosure. Zang also told Chance, and she understood, that he was going to instruct Home to send their deed of reconveyance directly to Northwestern with reference to the Zang escrow.

Northwestern received the deed of reconveyance from Home on January 18, 1973, and put it into escrow. Zang deposited $4,741.42 into the escrow, for the purpose of lending it to the owners of the 52d Street property to pay off the remaining liens. Chance knew that Zang was to receive a note secured by a deed of trust on the property. Oakley drafted a note payable by Oakley and Chance signed it as a witness.

Zang made several telephone calls and visits to Chance to verify the status of his escrow and to determine why there was a delay in receiving a deed of trust on the 52d Street property. On or about April 10, 1973, Zang told his attorney, Michael Priest about the loan transaction and expressed concern about his expected security interest. Priest phoned Chance that day and told her not to record the deed of reconveyance without notifying him.

At the time of the phone conversation with Priest, Chance knew that Oakley was obtaining another loan to be secured by a deed of trust on the identical 52d Street property. She then knew that if she recorded that deed of reconveyance without Zang's instructions, Oakley could successfully defraud Zang of his $12,628.58 payment to Home because Zang would lose his security interest and that Oakley was engaged in a course of conduct designed to accomplish that goal.

Without notifying Zang or Priest, Northwestern and Chance followed instructions from Oakley and a new lender to arrange a different loan. Northwestern and Chance recorded the deed of reconveyance, which Zang had obtained for his own benefit, thus clearing title on the 52d Street property. They prepared and recorded documents which facilitated the securing of a loan to Oakley from a different lender. They ordered the other lender's deed of trust on the property and closed Zang's escrow without carrying out his instructions. Oakley never paid any money to Zang in return for the $12,628.58 paid to Home. The new lender later foreclosed on the 52d Street property after Oakley and the owners defaulted.

The trial court found that Oakley intentionally defrauded Zang, causing him to lose his payment to Home plus his bargained for 10 percent per annum interest. The court also found that Priest was not negligent towards Zang. Zang's judgment was in the sum of $12,628.58 plus interest at 10 percent per annum commencing January 12, 1973, recoverable from Chance, Northwestern, and Joseph Oakley.

## I.

Appellants contend that the trial court erred in failing to make a specific finding on the issue of comparative negligence. Ordinarily, omitted findings may be implied from other findings and the judgment. (*S. F. Bay Area Rapid Transit Dist.* v. *Central Valley Nat. Bank* (1968) 265 Cal.App.2d 551, 555 [71 Cal.Rptr. 430]; *Spindler Realty Corp.* v. *Monning* (1966) 243 Cal.App.2d 255, 275 [53 Cal.Rptr. 7]; *Auer* v. *Frank* (1964) 227 Cal.App.2d 396, 406 [38 Cal.Rptr. 684, 8 A.L.R.3d 1108].)

Code of Civil Procedure section 634 provides an exception to this rule. At the time of trial, it provided that: "When written findings and conclusions are required, and the court has not made findings as to all facts necessary to support the judgment or a finding on a material issue of fact is ambiguous or conflicting, and the record shows that such omission, ambiguity or conflict was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on appeal or upon a motion under Section 657 or 663 that the trial court found in favor of the prevailing party as to such facts or on such issue."

Appellants argue that they brought the omission of explicit findings on comparative negligence to the court's attention. On February 2, 1979, appellants (Northwestern and Chance) filed proposed conclusions of law which recited that: "If plaintiff was damaged he was 100% comparatively negligent." On March 8, 1979, the court signed the findings of fact and conclusions of law prepared by defendant Priest. The court made a factual finding that Priest was not negligent and concluded that Zang was entitled to recover against Chance and Northwestern. Appellants did not subsequently object to the omission of more explicit findings concerning comparative negligence.

Prior to its amendment in 1968, effective January 1, 1969, Code of Civil Procedure section 634 provided that the inference on behalf of the

prevailing party may not be made, "if it appears that the party attacking the judgment made a written request for a specific finding on such issue either prior to the entry of judgment or in conjunction with a motion under Section 663 of this code." (Stats. 1963, ch. 378, § 1, p. 1167.) Under this language, the submission of proposed counter-findings was not sufficient to bring section 634 into play. (*Spindler Realty Corp.* v. *Monning, supra*, 243 Cal.App.2d 255, at p. 276.)

Appellants argue that the amended language providing that the omission must be "brought to the attention of the trial court" has overruled the *Spindler* case. However, the question remains whether appellants brought the omission to the trial court's attention with sufficient specificity. Appellants did not specifically request a finding of fact on the question of comparative negligence as successful appellants have done in several reported decisions. (*Guardianship of Brown* (1976) 16 Cal.3d 326, 334 [128 Cal.Rptr. 10, 546 P.2d 298]; *Kuffel* v. *Seaside Oil Co.* (1977) 69 Cal.App.3d 555, 566-567 [138 Cal.Rptr. 575]; *Jordan* v. *Consolidated Mut. Ins. Co.* (1976) 59 Cal.App.3d 26, 45, 46 [130 Cal.Rptr. 446].) We have found no reported decisions prohibiting the section 634 inference upon the basis of a mere proposed conclusion of law. Appellants' objection was only indirectly suggested by their requested conclusion of law. Since appellants could easily have proposed a specific finding and otherwise objected either before or after the trial court issued its findings, we conclude that appellants failed to bring this question adequately to the attention of the trial court. Accordingly, we infer that the trial court found that there was no negligence on the part of Zang. Such a finding is consistent with the findings, conclusions and judgment of the court.

## II.

Appellants argue that Zang's proof at trial presented a cause of action different from that which he pled and that this variance was prejudicial. Appellants objected to evidence concerning the duty of a title company with regard to a deed of reconveyance it received on behalf of an escrow customer. Appellants now argue that this evidence was relevant to a breach of fiduciary duty theory rather than the negligence theory set forth in the complaint.

"An escrow holder is the agent of all the parties to the escrow at all times prior to the performance of the conditions of the escrow .... [¶] It is the duty of an escrow holder to comply strictly with the instruc-

tions of his principal [citations], and if he disposes of the property of his principal in violation of these instructions, or otherwise breaches that duty, he will be responsible for any loss occasioned thereby. [Citations.] Likewise, it is the duty of an escrow holder to exercise ordinary skill and diligence in his employment [citations], and if he acts negligently he is responsible for any loss occasioned thereby, subject to the rules ordinarily applicable in the premises. [Citations.]" (*Spaziani* v. *Millar* (1963) 215 Cal.App.2d 667, 682-683 [30 Cal.Rptr. 658]; quoted extensively in *Diaz* v. *United California Bank* (1977) 71 Cal.App.3d 161, 167-170 [139 Cal.Rptr. 314].)

Respondent Zang's complaint included allegations concerning the creation of the escrow and his instructions to appellants. The complaint alleged that appellants were negligent in permitting the recordation of the deed of reconveyance contrary to his instructions. These allegations were sufficient to establish a cause of action based on negligent performance of appellants' duties as an escrow holder.

We need not concern ourselves here with mutual exclusivity in the abstract. Breach of fiduciary duty and negligence are different terms for the same cause of action under the facts in this case. ■ Negligence cannot exist without the breach of a duty to the injured party. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770]; *George A. Hormel & Co.* v. *Maez* (1979) 92 Cal.App.3d 963, 966 [155 Cal.Rptr. 337, 15 A.L.R. 4th 1141]; 4 Witkin, Summary of Cal. (8th ed. 1974) Torts, § 488, at p. 2749.) This basic rule has a corollary—a fiduciary duty may be breached by negligence in some instances. Specifically, "if the escrow holder acts negligently, 'it would ordinarily be liable for any loss occasioned by its breach of duty.' [Citations.]" (*Amen* v. *Merced County Title Co.* (1962) 58 Cal.2d 528, 532 [25 Cal.Rptr. 65, 375 P.2d 33]; see also *Axley* v. *Transamerica Title Ins. Co.* (1978) 88 Cal.App.3d 1, 9 [151 Cal.Rptr. 570]; *Diaz* v. *United California Bank, supra*, 71 Cal. App.3d 161, 168; *Gordon* v. *D & G Escrow Corp.* (1975) 48 Cal.App. 3d 616, 621 [122 Cal.Rptr. 150].)

■ Zang pled all the facts relating to its dealings with Northwestern and Chance. That Northwestern and Chance were fiduciaries was an underlying finding of fact. The conclusion that Northwestern and Chance owed Zang a fiduciary duty is a conclusion of law here consistent with a negligence theory. The trial court's conclusion that the breach of fiduciary duty amounted to negligence was precisely what

was authorized by the pleadings and substantial evidence. Appellants could not have been prejudiced by omission of a more conclusory pleading since it is apparent that appellants' liability was premised on their status as escrow holder.

### III.

Appellants' third contention is that Northwestern did not owe respondent Zang any duty to obtain a deed of trust on the 52d Street property. The trial court found that Zang gave Chance oral escrow instructions requesting such a deed as security for the loan transaction. Appellants argue that oral escrow instructions are not binding and that even if they are, the instructions given by Zang were inadequate to create any duty. They insist that Financial Code sections 17403.2 and 17403.3 require escrow instructions to be in writing. Section 17403.2[1] provides that escrow agents may not solicit or accept escrow instructions with blanks to be filled in after signing unless any changes are also signed. Section 17403.3 provides that: "At the time of execution a copy of each escrow instruction or amended or supplemental escrow instruction shall be delivered to all persons executing the same."

■ We now confront a question of first impression, as no California court has had occasion to interpret these statutes since 1953 when they were added to the Financial Code. The provisions are contained in division 6 of the Financial Code. This division contains statutes regulating the business of escrow agents.[2] It contains provisions on licensing (§ 17200 et seq.) and license revocation (§ 17600 et seq.).

The statutes at issue are contained in chapter 3 of the division (§ 17400 et seq.) which consists primarily of rules governing an escrow agent's handling of escrow transactions. Taking account of this statutory scheme, we conclude that section 17403.2 was intended to prevent

---

[1]"No person subject to this division shall solicit or accept an escrow instruction or amended or supplemental escrow instruction containing any blank to be filled in after signing or initialing of such escrow instruction or amended or supplemental escrow instruction, nor permit any person to make any addition to, deletion from, or alteration of an escrow instruction or amended or supplemental escrow instruction, unless such addition, deletion or alteration is signed or initialed by all persons who had signed or initialed such escrow instruction or amended or supplemental escrow instruction prior to such addition, deletion or alteration."

[2]Section 17005.5 provides: "'Person subject to this division' means any person undertaking the performance of escrow agent services. Unless specifically exempted, as in Section 17006, however, this definition shall not be used to exclude anyone."

escrow agents from accepting easily altered written instructions containing blanks. Section 17403.3 provides further protection by requiring delivery of a copy of each escrow instruction "to all persons executing the same."

These provisions simply assure that the party opening the escrow will have an accurate idea of what the instructions say. Had the legislature intended to exempt escrow agents from liability on unwritten instructions, it could have done so explicitly. We cannot find a sound basis for concluding that the Financial Code sections were intended to abrogate the principles of contract and agency law which allow for binding oral agreements. This conclusion is bolstered by recent decisions restrictively interpreting the statute of frauds. "Unless the statute clearly requires an agreement or authority to be in writing the statute is not to be applied." (*Ripani* v. *Liberty Loan Corp.* (1979) 95 Cal.App.3d 603, 610 [157 Cal.Rptr. 272]; see also *Sunset-Sternau Food Co.* v. *Bonzi* (1964) 60 Cal.2d 834, 838 [36 Cal.Rptr. 741, 389 P.2d 133]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 197, p. 180.) This approach should apply with even greater force to a measure which is not a statute of frauds provision. Finally, we are not persuaded that the oral instructions were not adequate. The trial judge quite properly considered them so.

In conclusion, appellants make additional arguments which, although meritless, we specifically discuss. They contend that Zang's actions in paying off Home outside of escrow absolved Northwestern of any duty to obtain a deed of trust from defendant Oakley. However, this argument misconstrues the factual basis for the trial court's ruling. Appellants' liability arose from their affirmative act of recording the deed of reconveyance without informing respondent or his attorney and their failure to inform either that Oakley was arranging for another lender to receive a deed of trust. Assuming, arguendo, that appellants had no duty to obtain a deed of trust from Oakley, they still are liable for their failure to follow escrow instructions and their negligence in allowing a fraud to be perpetrated on respondent.

Appellants contend also that under former Civil Code section 2941, they were required to record the deed of reconveyance.[3] However, the

---

[3]In 1973, this section provided that: "When any mortgage or deed of trust has been satisfied, the mortgagee or beneficiary, or his assignee, must, on the demand of the mortgagor or trustor, or upon the demand of the owner of the land execute, acknowl-

statute applies to mortgagees, beneficiaries, and their assignees. There is no evidence that Northwestern or Chance fell into any of these categories, nor is there any evidence that Chance relied upon or even knew of the statute in question.

Appellants also contend that where the actions causing a loss took place outside of the escrow, the escrow holder cannot be held liable, citing *Schaefer* v. *Manufacturers Bank* (1980) 104 Cal.App.3d 70 [163 Cal.Rptr. 402]. The *Schaefer* case is inapposite however since in it there was no negligence shown. "The uncontradicted showing is that the escrow carried out its instructions, complying strictly therewith as was its duty. [Citations.] [¶] ... all representations, statements, and delivery of the documents causing the problem were accomplished solely by the buyers... ." (*Id.* at p. 78.) In the instant case, appellants themselves were involved in false representations and noncompliance with escrow instructions. Moreover, the trial court's conclusions establish that the proximate cause of the loss was the conduct of appellant escrow holders.

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.

---

edge, and deliver to him a certificate of the discharge thereof, or a request to the trustee for a full reconveyance, so as to entitle such certificate to be recorded or a full reconveyance to be executed by the trustee, or he must enter satisfaction, or cause satisfaction of such mortgage to be entered of record; and any mortgagee or any beneficiary under a deed of trust, or his assignee, who for a period of 30 days refuses to execute, acknowledge, and deliver to the mortgagor, or, also, to the owner of the land the certificate of discharge, or to enter satisfaction, or cause satisfaction of the mortgage to be entered, as provided in this chapter or to request a full reconveyance from the trustee pursuant to the terms of the deed of trust, is liable to the mortgagor or trustor, or to the owner of the land, as the case may be, or his grantees or heirs, for all damages which he or they may sustain by reason of such refusal, and shall also forfeit to him or them the sum of three hundred dollars ($300). The mortgagee or the beneficiary under a deed of trust, his assignee or personal representative, shall deliver to the mortgagor or trustor, his heirs, successors or assigns, the mortgage or deed of trust and the note so paid or satisfied."