Filed 3/29/23 Avina v. Avina CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARIA AVINA,<br><br>    Petitioner and Respondent,<br><br>    v.<br><br>MARCO AVINA et al.,<br><br>    Objectors and Appellants. | D080302<br><br><br>(Super. Ct. No. 37-2019-00063638-PR-SP-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Julia Craig Kelety, Judge. Affirmed.

Southwick Law Firm and Stanley K. Southwick for Objectors and Appellants.

Law Office of Dianna Juengst Hunt, Dianna Juengst Hunt; Law Office of David P. Mayberry and David P. Mayberry for Petitioner and Respondent.

## INTRODUCTION

Maria Avina's husband, Jesus Enrique Avina, died without a will. Jesus allegedly left behind his property interest in A & A: Grove Service & Produce (A & A), a company he and Maria built together during their

marriage.[1] After his death, Maria brought a spousal property petition seeking a determination that her one-half community property interest in A & A belonged to her, and Jesus's one-half interest in A & A passed to her as the surviving spouse.

Two of the couple's children, Marco Antonio Avina and Marcial Avina, objected to Maria's petition. They asserted the property interest identified by Maria in her petition did not exist, and that ownership rights in A & A were the subject of a civil action for declaratory relief they had filed against Maria. The probate court continued resolution of Maria's petition for more than two years awaiting resolution of the civil action and, when the civil action was dismissed, the probate court granted Maria's petition. It found that Marco and Marcial lacked a "probate interest" because Jesus died intestate, and all interests owned by Jesus that are community property passed to Maria as the surviving spouse.

On appeal, Marco and Marcial contend the probate court erred in deciding the petition without proper notice and an evidentiary hearing. We conclude the trial court did not abuse its discretion in granting Maria's petition because Marco and Marcial lacked standing to contest it.[2] Because

---

[1]    To distinguish the members of the Avina family, we refer to them by their first names.

[2]    Because this issue was not raised by either party in the briefing on appeal, we issued an order requesting the parties submit supplemental letter briefs addressing the question of whether Marco and Marcial met their burden in the probate court to establish their standing to object to the petition under Probate Code section 48. We have received and considered the parties' supplemental briefing in deciding this appeal.

we affirm on that basis, we do not reach Marco and Marcial's other contentions.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Maria's Spousal Property Petition*

Maria and Jesus were married for 49 years and had five children, including Marco and Marcial. When they married, they did not own any real property, and Jesus was employed and had a net worth of approximately $10,000 or less. Maria and Jesus used "community property monies" to seed and maintain A & A, during their marriage. They "built the business together during their marriage, handling the day-to-day operations together," and, eventually, they hired "their sons to assist." At the time A & A was incorporated, "[Jesus] was the owner of all shares of the corporate stock."

Jesus died intestate on August 2, 2019.

On December 2, 2019, Maria filed a form petition for a determination of *property* passing to her as the surviving spouse under Probate Code[3] sections 13500 and 13650 (petition).[4] Maria requested that Jesus's "one-half interest

3    Unspecified statutory references are to the Probate Code.

4    Section 13500 provides in relevant part: "[W]hen a spouse dies intestate leaving property that passes to the surviving spouse under [s]ection 6401, . . . the property passes to the survivor subject to [sections 13540 and 13550], and no administration is necessary."

Section 13650 provides: "A surviving spouse . . . may file a petition . . . requesting an order that administration of all or part of the estate is not necessary for the reason that all or part of the estate is property passing to the surviving spouse" and "an order confirming the ownership of the surviving spouse of property belonging to the surviving spouse under [s]ection 100 or 101."

in all 200 shares, common stock, in A & A" be determined "as having *passed*" to her as the surviving spouse. She also requested the other one-half interest in the 200 shares of common stock be determined "as having *belonged*" to her as the surviving spouse.

## II.

### *Marco and Marcial's Objections*

After being served with the petition and notice of hearing, Marco and Marcial filed separate form objections on February 20, 2020. They were the only persons to file objections to Maria's petition.

Marco and Marcial stated they were vice president and assistant vice president of A & A, respectively. Their objections were based first on their assertion that "[n]o shares of stocks in A & A . . . have ever been issued" and thus, "[t]he property listed as being passed and/or confirmed to [Maria] does not exist and has never existed."

The second basis for their objections was that there was a pending action "to determine the ownership rights" of A & A. Before filing their objections to Maria's petition, Marco and Marcial filed a civil action against Maria seeking declaratory relief "to determine the ownership rights" of A & A in superior court.[5]

In a joint case management statement, Marco and Marcial claimed they were "co-owners and managing partners of A & A." Referring to the company as "a California partnership," they claimed Jesus "was the

---

Section 100, subdivision (a), states: "Upon the death of a person who is married . . . , one-half of the community property belongs to the surviving spouse and the other one-half belongs to the decedent."

[5] Superior Court of California, County of San Diego, case No. 37-2020-00008943-CU-MC-NC. This action was filed in February 2020.

4

partnership's third partner prior to and at the time of his death," and held "his one-third interest in the business through his California corporation." They filed a second joint case management statement and this time, they claimed "ownership of the corporation *equitably belongs* to [Jesus's] estate and to [Marco and Marcial] individually in equal parts." (Italics added.)

## III.

### *Marco and Marcial's Civil Action for Declaratory Relief*

As noted, Marco and Marcial asserted "any and all issues involving [Jesus's] interest and/or [Maria's] interest" in A & A were the subject of their pending action for declaratory relief. They requested that the proceedings on Maria's petition "be stayed to allow the civil department to resolve the dispute over the relative ownership interests in the ongoing partnership A & A," and then Maria's "spousal interest in [Jesus's] corporation's interest can be reduced to a sum certain."

Maria demurred twice to her sons' complaint. Both demurrers were sustained. In its ruling on the first demurrer,[6] the superior court "noted significant confusion in the allegations as to the nature of the business in question and the nature of the corporate structure of that business." The court granted Marco and Marcial leave to amend, and "extend[ed] a particularly long time for the parties to explore whatever proper alternatives may need to be taken[,] i.e. initiating probate proceedings so that the nature

---

[6] Copies of the superior court's orders on the first and second demurrer were not included in the record on appeal. The record does contain a copy of the court's December 14, 2021 minute order denying Marco and Marcial's later-filed motion for relief pursuant to Code of Civil Procedure section 473, subdivision (b), in which the court describes in detail the proceedings on the demurrers. We take our summary of the declaratory relief action from the December 14, 2021 minute order.

5

of whether [Jesus's] interest passed to [Maria] can be determined, and so that, if [Jesus] needs to be named individually in this lawsuit, his Estate will have a personal representative, etc." The court also "provided [Marco and Marcia with] a detailed analysis of why the allegations, and the case in general, was so unclear (and *lacking with regard to the issue of standing*)." (Italics added.) Having done so, the court "advised" them that it "will not be inclined to continue granting leave to amend if the confusion, and the issues addressed in both this ruling and the briefing on the demurrer, are repeated in any amended complaint." (Italics omitted.)

Maria demurred again when Marco and Marcial filed their first amended complaint. But before the hearing on the second demurrer, Marco and Marcial filed a second amended complaint, without a stipulation or leave of court, and instead of filing an opposition to the demurrer. The demurrer remained on calendar, and at the hearing where Marco and Marcial failed to appear, the superior court struck the second amended complaint "as improperly filed" and sustained the unopposed demurrer to the first amended complaint without leave to amend.

Marco and Marcial then moved for relief from the superior court's order of dismissal, under Code of Civil Procedure section 473, subdivision (b).[7] In a declaration, their lawyer claimed he "was mistaken as to the law" and believed they were permitted to file the second amended complaint instead of an opposition to the demurrer.

_____

[7] "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (Code Civ. Proc., § 473, subd. (b).)

6

In December 2021, the superior court denied the motion for relief. It explained that, with its prior "warning . . . , the failure of Plaintiff's [*sic*] counsel to appear at the hearing [after receiving the court's tentative ruling explaining its intention to strike the second amended complaint and grant the unopposed demurrer] and explain his mistake of routine law regarding filing amended pleadings, presently has no explanation on the record before [it]."

IV.

*Proceedings on Maria's Petition*[8]

On January 10, 2022, a case management conference and hearing on the petition were held for the probate court "to check on the status" of Marco and Marcial's declaratory relief action.

Maria's attorney advised the court that Maria's demurrer to Marco and Marcial's first amended complaint had been sustained without leave to amend, and the sons' subsequent motion for relief from the order of dismissal had also been denied. Marco and Marcial's attorney responded he believed the "declaratory relief case was still active because no dismissal or judgment had yet been entered in it," and that his clients "were still considering their options to file an appeal" of the order denying relief under Code of Civil Procedure section 473, subdivision (b), "as well as other potentially available

---

[8]     The parties elected to use a settled statement as the record of the oral proceedings. (Cal. Rules of Court, rule 8.137(b)(1) [A settled statement is a condensed narrative of the oral proceedings that the appellant believes necessary for the appeal.].) We derive our summary of the proceedings from the settled statement, and limit our summary to the facts relevant to our disposition of this appeal.

remedies."[9] The court believed, "based on her review, the civil matter was concluded."

The court asked Marco and Marcial's attorney "whether he or his clients believed . . . whatever interest [Jesus] had in the asset would be a community property asset." When counsel answered the question by stating "the [p]etition was only for 200 shares of common stock in A & A" (italics omitted), the court explained "[it] was not interested in whether shares of stock existed or did not exist," but only "whether [Jesus] had a community property interest in A & A[.]" So the court repeated the question, " 'Are your clients maintaining that this asset was community or separate?' " Marco and Marcial's attorney responded, " 'If there was an interest, I would say that it[']s community.' "

Next, the court asked "whether [Marco or Marcial] agreed that [Jesus] had an interest in A & A . . . to which Marco . . . replied, 'Yes.' " The court then confirmed with all parties there was no disagreement that Jesus died without a will.

Upon the court's inquiry, Maria's attorney confirmed that Maria "was asserting that one-half of [Jesus's] interest in the asset belongs to [her] as her separate property and that the other one-half of [his] interest passes under the laws of intestate succession to the spouse."

The court stated it "was going to grant" the petition "after striking the words '. . . in all 200 shares common stock' " from it, which it did by interlineation from the bench. Counsel for Marco and Marcial "asked the court whether it was proper at a case management conference to grant such

---

9    The record on appeal does not reveal that Marco and Marcial have appealed the order denying relief, or that they pursued any other remedies.

relief without at least 15 days notice." The court responded that Marco and Marcial had been on notice "that such order could be entered by the [c]ourt since 2019 when the [p]etition was filed." (Italics omitted.)

The court allowed counsel for Marco and Marcial to "make an offer of proof as to what [they] would be able to establish" that would preclude the court from granting the petition. Counsel responded that the only property the petition sought was the 200 shares of common stock in A & A, but the court "ha[d] now changed it to any interest in the business." Counsel emphasized that Jesus's interest in A & A "ha[d] yet to be defined and would need to be worked out in civil court."

The court explained that under section 6401,[10] "a person's community property passes one-hundred percent (100%) to the surviving spouse when [the other spouse] die[s] without a will." It stated that "its ruling was only on [Jesus's] portion . . . in A & A," and that "when a person dies without a will and they own community property, the probate code says it passes to the spouse" and "[i]t is for the [o]bjectors to show that they had some sort of interest in A & A." The court then ruled Marco and Marcial " '[c]ertainly have no probate interest, because there is no will' " and the petition would be granted "as to [Jesus's] one-half interest and the surviving spouse's one-half interest." The judge emphasized, " 'That's all I'm ruling today.' "

On January 13, 2022, the probate court entered a spousal property order granting the petition with the determination that "[a]ll of . . . Jesus['s] . . . one-half (1/2), community property interest in the business known as

_____

10    Section 6401, subdivision (a), provides:  "As to community property, the intestate share of the surviving spouse is the one-half of the community property that belongs to the decedent under Section 100."

9

A & A" passed to Maria as the surviving spouse, and the other one-half interest in A & A was confirmed as belonging to Maria. Marco and Marcial timely appealed.

DISCUSSION

I.

*Dispositive Issue on Appeal*

Marco and Marcial contend the probate court erred in granting Maria's petition by rendering a dispositive ruling at a case management conference without giving them notice and an opportunity to present evidence to support their objections, and by striking the phrase " 'in all 200 shares of common stock' " from the petition rather than requiring proof to a "legal certainty" whether Jesus held any ownership interest in A & A when he died.

But, in granting the petition, the probate court determined both Marco and Marcial had " 'no probate interest' " in Jesus's estate because " 'there is no will.' " The record does not reveal that the court expressly predicated its ruling on finding that Marco and Marcial were not " 'interested person[s]' " under section 48, the controlling statute on standing to object to the petition. However, because of the presumption of correctness, we may assume the probate court decided so, even if this may not actually have been its reasoning. In reviewing a judgment, "we review the correctness of the order and not the court's reasons." (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 237.)

As our high court said long ago, "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon *any theory* of the law applicable to the case, it must be sustained

10

regardless of the considerations which may have moved the trial court to its conclusion." (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329, italics added; accord *Estate of Rossi* (2006) 138 Cal.App.4th 1325, 1334–1335.)

Because Marco and Marcial's standing to object to the petition in the first instance is dispositive in this appeal, we start with this issue.

II.

*Standing to Object in a Probate Proceeding*

A party has standing to object to a spousal property petition only if he or she is an "interested person." (§ 1043, subd. (a).)

Section 48, subdivision (a), defines an " 'interested person.' " It states: "Subject to subdivision (b), 'interested person' includes any of the following: [¶] "(1) An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a *property right* in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding. [¶] (2) Any person having priority for appointment as personal representative. [¶] (3) A fiduciary representing an interested person." (Italics added.)

Subdivision (b) of section 48 provides "[t]he meaning of 'interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding."

By the express terms of section 48, "[t]he probate court has flexibility in determining whether to permit a party to participate as an interested party." (*Estate of Sobol* (2014) 225 Cal.App.4th 771, 782.) It has been said: " 'Subdivision (a) of section 48 does not purport to provide an exclusive list of recognizable interests. Rather, it permits the court to designate as an interested person anyone having an interest in an estate which may be affected by a probate proceeding. Subdivision (b) allows the court to

11

determine the sufficiency of that party's interest for the purposes of each proceeding conducted. Thus, a party may qualify as an interested person entitled to participate for purposes of one proceeding but not for another.' " (*Sobol,* at p. 782, quoting *Estate of Davis* (1990) 219 Cal.App.3d 663, 668.)

"In the seminal case of *Estate of Land* [(1913) 166 Cal. 538], the California Supreme Court noted ' "the statute contemplates a legal interest and not merely a grievance to the feelings of propriety or sense of justice." ' " (*Estate of Lind* (1989) 209 Cal.App.3d 1424, 1431.) "The purpose of restricting who may contest probate is to avoid 'delaying the settlement of the estate.' " (*Lind*, at p. 1431, quoting *Estate of Plaut* (1945) 27 Cal.2d 424, 429 ["[t]he requirement that the contestant be an interested person prevents persons with no interest from delaying the settlement of the estate"]; *Estate of Maniscalco* (1992) 9 Cal.App.4th 520, 523 [The legislative intent of the " 'interested person' " requirement is to prevent "persons with no interest from delaying the settlement of estate affairs."].) Thus, "the right to ask the court for an adjudication of [a] claim to the estate should be denied" when the objector's purported "interest 'has not even the appearance of validity or substance.' " (*Plaut*, at pp. 428–429.)

"Because the determination of whether a party is an interested person pursuant to Probate Code section 48 is subject to the probate court's discretion, we apply the deferential abuse of discretion standard in reviewing the determination." (*Estate of Prindle* (2009) 173 Cal.App.4th 119, 126; see *Estate of Maniscalco, supra,* 9 Cal.App.4th at p. 525.) The probate court "is empowered to resolve competing claims over the title to and distribution of the decedent's property" (*Estate of Heggstad* (1993) 16 Cal.App.4th 943, 952) and has a duty to act as " 'the guardian of estates of deceased persons' " (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 102). " ' "[T]hat power is not to be

12

interfered with by the appellate court, unless there has been a clear abuse of that discretion.' ' " (*Estate of Hammer* (1993) 19 Cal.App.4th 1621, 1633–1634.)

Here, " '[t]he test is not whether we would have made a different decision had the matter been submitted to us in the first instance. Rather, the discretion is that of the [probate] court, and we will only interfere with its ruling if we find that under all the evidence, viewed most favorably in support of the . . . court's action, no judge reasonably could have reached the challenged result.' " (*Estate of Hammer, supra*, 19 Cal.App.4th at p. 1634.) " 'We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise.' " (*Safeco Ins. Co. of America v. Superior Court* (2009) 173 Cal.App.4th 814, 832–833.)

III.

*The Probate Court Did Not Abuse Its Discretion in Granting the Petition Because Marco and Marcial Failed to Demonstrate They Are "Interested Persons" Under Section 48*

In their supplemental letter brief, Marco and Marcial assert they had standing to object to the petition "on at least two different grounds" under section 48. They do not state explicitly the two grounds, but argue that no shares of stock had been issued by A & A at the time of Jesus's death; they are two of the five surviving children of Jesus; and they were "the sole corporate directors and officers of A & A" so they stand to be "dramatically impacted" by the disposition of the petition. None of these asserted facts establish that Marco and Marcial are interested persons within the meaning of section 48.

Jesus died intestate and Maria is his surviving spouse. Maria alleged in the petition that she and Jesus used "community property monies" to build

13

A & A together during their marriage, which makes *whatever* interest Jesus had in A & A presumptively community property. (See Fam. Code, § 760 ["Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."].) Marco and Marcial did not dispute this fact. At the January 10, 2022 hearing, they conceded that Jesus "had an interest in A & A," and their attorney, speaking for them, agreed "[i]f there was an interest, . . . it[']s community."[11]

Now, in their reply to Maria's supplemental letter brief, Marco and Marcial argue the probate court's use of the term " 'interest' " was "ambiguous," and "could reasonably be interpreted to also mean: [Jesus] having been an incorporator of A & A . . . , one of its directors, or have referred to the salary [Jesus] received prior to his death." And because they had "consistently alleged that no shares of common stock were ever issued to Jesus . . . during [his] lifetime," Marco's statement that Jesus had an interest in A & A "would not have meant that his father was an owner of, or held a community property interest in, A & A." We disagree.

There was nothing ambiguous about the probate court's use of the term " 'interest.' " The court expressly directed its many questions to whether

---

[11]    The probate court asked "whether any of the Objectors [i.e. Marco or Marcial] agreed that [Jesus] had *an interest* in A & A," and Marco replied, " 'Yes.' " (Italics added.) Although Marcial did not audibly respond, he also did not challenge Marco's affirmative response. It is reasonable to infer from his silence that Marcial implicitly adopted Marco's answer. (See Evid. Code, § 1221 ["Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth."].)

Jesus had "a community *property* interest" in A & A. (Italics added.) Moreover, Marco and Marcial's attempt to explain away their admissions is belied by their own pleadings. In their first joint case management conference statement, Marco and Marcial claimed A & A was a "partnership" and Jesus held *a "one-third interest in the business*." (Italics added.) In their second statement, they claimed A & A *"equitably belongs"* to Jesus's estate and to each of them "in equal parts." (Italics added.) A party cannot first advocate one position, and later, if it becomes beneficial, assert the opposite. (See *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.)

"Upon the death of a person who is married . . . , one-half of the community property belongs to the surviving spouse and the other one-half belongs to the decedent" (§ 100, subd. (a)), and "[a]s to community property, the intestate share of the surviving spouse is the one-half of the community property that belongs to the decedent under [s]ection 100." (§ 6401, subd. (a).) The probate court was correct in its determination that, upon Jesus's death without a will, one-half of the community property interest in A & A belonged to Maria, and the other one-half interest belonging to Jesus passed to Maria as the surviving spouse.

Under California laws on intestate succession, none of the five surviving children, including Marco and Marcial, stood to inherit from any community property asset in Jesus's estate. Because Marco and Marcial "did 'not stand to inherit one iota of any asset in any outcome' in the present litigation," they are not interested persons under section 48 with standing to object to the petition. (*Estate of Sobol, supra,* 225 Cal.App.4th at pp. 782, 783.) Under the plain terms of section 48, subdivision (a), the status of being the " 'child' " of the decedent, "by itself, is not enough to make a party an 'interested person' for standing purposes." (*Sobol,* at p. 782.) "A 'beneficiary'

15

must have ' "a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding" ' to be an interested person." (*Ibid.*; see § 48, subd. (a).) We conclude the probate court properly found Marco and Marcial did not have such a property right in Jesus's estate that could be affected by granting Maria's petition.

Having failed to identify a *property* right or interest that could be affected by the petition, Marco and Marcial argue in their supplemental letter brief that they have a "direct interest" "[b]y virtue of their *managerial positions*." (Italics added.) They explain that, as A & A's "sole corporate directors and officers," they "were solely responsible for the management and operations of A & A . . . and each held control over the corporation" and "[a]s such, [their] control of A & A . . . and their roles within the corporation could be dramatically impacted" by the disposition of the petition and "gave them standing to object." They contend that under the "broad permissions" granted by subdivision (b) of section 48, "[a]ny action that sought to confirm property held by the corporation or related to the operation, management, or functionality of the corporation would, by virtue of their position within the corporation, necessarily make [them] interested persons."[12]

Although it is true probate courts have *in their discretion* given standing to parties not specifically listed in subdivision (a) of section 48 (see *Estate of Sobol*, *supra*, 225 Cal.App.4th at p. 782 [discussing cases]), we are not aware of a case in which standing was conferred on a person "[b]y virtue

---

[12] We note that in their supplemental letter brief and their reply to Maria's supplemental letter brief, submitted to directly address the issue of standing, Marco and Marcial no longer assert, as they did in the probate court, that they have any *ownership* interest in A & A. Rather, they assert only that they had "managerial positions" with A & A.

16

of their managerial positions." Marco and Marcial fail to cite us to any case authority supporting that contention. Instead they rely solely on *Estate of Maniscalco, supra*, 9 Cal.App.4th 520, a case that does not help them.

In *Estate of Maniscalco*, a corporation purchased real property held by a probate estate and three days after the sale was confirmed at a confirmation hearing without objection, the City of El Cajon (City) moved to vacate the confirmation order, alleging it intended to appear and overbid at the confirmation hearing but was erroneously advised by counsel for the estate administrator that the hearing had been continued. (*Estate of Maniscalco, supra*, 9 Cal.App.4th at p. 522.) Under these circumstances, the probate court concluded the City was an interested party within the meaning of section 48, subdivision (b), *to bring a motion for relief* pursuant to Code of Civil Procedure section 473. (*Maniscalco*, at pp. 522, 525–526.)

The "sole issue" presented on appeal in *Estate of Maniscalco* was whether the City was an interested person under Probate Code section 48 "*to have the necessary standing under Code of Civil Procedure section 473* to move to vacate the order confirming the sale." (*Estate of Maniscalco, supra*, 9 Cal.App.4th at pp. 522–523, italics added.) The Court of Appeal agreed the probate court properly determined the City was an interested party *for that purpose*, based on the weighing of policy considerations. Those policy considerations included "encouraging competitive bidding, protecting the best interest of the estate by obtaining the highest possible sales price for the estate real property, and providing relief where an adversary has been victimized in the legal process by mistake, inadvertence, surprise or excusable neglect." (*Id.* at p. 525.) None of those policy considerations are implicated in this case. *Estate of Maniscalco* does not compel the conclusion urged by Marco and Marcial.

17

Instead, *Estate of Maniscalco* affirms what subdivision (b) of section 48 already makes explicit—"[t]he meaning of 'interested person' as it relates to particular persons may vary from time to time and *shall be determined according to the particular purposes of, and manner involved in, any proceeding*." (§ 48, subd. (b), italics added.) For that reason, " 'a party may qualify as an interested person entitled to participate for purposes of one proceeding *but not for another.*' " (*Estate of Maniscalco, supra*, 9 Cal.App.4th at p. 524, italics added.) In other words, "section 48 is designed to provide the probate court with *flexibility to control its proceedings* to both further the best interests of the estate and to protect the rights of interested persons to those proceedings." (*Ibid.,* italics added.)

Here, the probate court determined Marco and Marcial had " 'no probate interest' " to object to Maria's spousal property petition. So we assume the court necessarily declined to exercise its discretion to recognize them as " 'interested person[s]' " under section 48, subdivision (b), for that purpose. (*Zang v. Northwestern Title Co.* (1982) 135 Cal.App.3d 159, 164 ["Ordinarily, omitted findings may be implied from other findings and the judgment."]; see also *Taylor v. Nu Digital Marketing, Inc.* (2016) 245 Cal.App.4th 283, 287–288 [" ' "A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent[.]" ' "].) Marco and Marcial made known their "managerial positions" in A & A to the probate court, and it was the court's discretion under section 48, subdivision (b), to grant or *not* grant them standing to participate in the probate proceedings on the basis of that asserted interest. We see no abuse of that discretion in the court's decision to not recognize Marco and Marcial as interested persons for the purpose of the proceedings before it.

Almost two years after they objected to Maria's petition, Marco and Marcial failed to establish any property interest in Jesus's estate and they failed to establish any ownership interest in A & A by way of their civil action for declaratory relief against Maria. And no one else had appeared to object to Maria's petition. Given these circumstances, the probate court's decision *not* to recognize Marco and Marcial as " 'interested persons' " was consistent with the public policy underlying section 48 to "prevent[ ] persons with no interest from delaying the settlement of estate affairs." (*Estate of Maniscalco, supra*, 9 Cal.App.4th at p. 523; accord *Estate of Lind, supra*, 209 Cal.App.3d at p. 1431.)

We turn to the other point Marco and Marcial mentioned in their supplemental letter brief. As they did below, Marco and Marcial claim "no stock shares had been issued by A & A" at the time of Jesus's death, thus there was no community property within the petition that it could award Maria. We again note this claim is inconsistent with Marco and Marcial's admissions that Jesus possessed a community property interest in A & A. Regardless, they also never explain why the asserted fact is even relevant to whether they had standing to object to Maria's petition. The probate court specifically stated: "its ruling was only on [Jesus's] portion . . . in A & A," *whatever* that was. If there is any dispute as to the relative ownership of A & A, including any shares of stock, a party may seek a declaration of his or her rights in a civil action. (See Code Civ. Proc., § 1060.) Marco and Marcial did just that, but failed to establish their entitlement to declaratory relief.

Marco and Marcial last contend due process requires that if the probate court questioned their standing, it should have given them notice and an opportunity to present evidence on standing. The probate court did provide them with the opportunity to make an offer of proof as to why it should not

19

grant the petition; in response, they did not provide reasons that would compel a different result then the one we have reached. A remand for a hearing may be appropriate if Marco and Marcial can *state* a prima facie interest in Jesus's estate, but they cannot even meet that minimal threshold. (See *Estate of Plaut, supra*, 27 Cal.2d at p. 428 ["the right to ask the court for an adjudication of his claim to the estate should be denied a person whose interest 'has *not even the appearance of validity* or substance' " (italics added)].) Any further delay in the settlement of Jesus's estate affairs would undermine the purpose of section 48.

## DISPOSITION

The January 13, 2022 spousal property order is affirmed. Respondent Maria Avina shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

DO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


BUCHANAN, J.

20